THOMAS PORTER, as Administrator of All and Single the Goods, Chattels and Credits That Were of SARAH PORTER, Deceased, Appellant, *v.* NEW YORK CITY INTERBOROUGH RAILWAY COMPANY, Respondent.

First Department, June 10, 1932.

*John J. McGinty* of counsel [*Thomson & McGinty*, attorneys], for the appellant.

*Fredric W. Frost* of counsel [*Archibald C. Mayo* with him on the brief; *Alfred T. Davison*, attorney], for the respondent.

MERRELL, J.   The action was brought by plaintiff, as administrator of the goods, chattels and credits of Sarah Porter, deceased, to recover damages for the death of plaintiff's intestate alleged to have been caused by the negligence of defendant.   The answer of the defendant was substantially a general denial, the defendant as a separate defense alleging that the injuries resulting in the death of plaintiff's intestate were caused by her own carelessness and negligence and not because of any carelessness and negligence on the part of defendant.   The accident which resulted in the death of plaintiff's intestate occurred at about or shortly after eight o'clock at night of the 4th day of May, 1927, on Ogden avenue in the city of New York.   Plaintiff's intestate was fifty-three years of age and was struck by a south-bound trolley car operated by defendant.   On Ogden avenue the defendant maintained two car tracks.   Ogden avenue runs in a northerly and southerly direction. The easterly of the defendant's railway tracks was the north-bound track and the westerly was the south-bound track.   At the time of the accident there was a slight trace of rain, but at eight o'clock, daylight saving time, on May fourth, it was still daylight.

In behalf of plaintiff there were two witnesses sworn who claimed to be eyewitnesses of the accident.   One of these was Alvin Rivers, a taxicab driver, who testified that he was driving his taxicab and had passed One Hundred and Sixty-seventh street, going northerly on Ogden avenue, a distance of about fifty feet, when he saw the accident which befell plaintiff's intestate.   Rivers testified

at the trial that when he was about fifty feet north of One Hundred and Sixty-seventh street he saw plaintiff's intestate start to cross Ogden avenue from the east toward the west, walking rapidly straight across the street with her head down and looking neither to the right nor the left; that the plaintiff's intestate walked immediately in the path of the oncoming trolley car, which he testified was going from fifteen to twenty-five miles an hour. At this point for several blocks there was quite a steep down grade. Rivers testified that plaintiff's intestate first crossed the easterly or north-bound track of defendant's line, and then stepped upon the south-bound track when the south-bound trolley car on the defendant's track was only about four or five feet away from her. He testified that when she was struck, in his judgment, the car was traveling at the rate of about twenty-five miles an hour, and that the point where plaintiff's intestate was struck was about two hundred feet northerly of One Hundred and Sixty-seventh street and one hundred feet southerly of One Hundred and Sixty-eighth street. Rivers testified that the right front end of the defendant's car struck plaintiff's intestate and threw her to the pavement; that the motorman of the car immediately applied his brakes in an effort to stop the car, and that when it was brought to a standstill the body of plaintiff's intestate was lying upon the pavement three feet behind the trolley car.

The only other witness who claimed to have seen the accident was a boy fourteen years of age at the time of the accident. This boy, Jerome Schweers by name, was not discovered until two nights before the trial of the action, when one of the attorneys for plaintiff accosted him in a candy store on the easterly side of Ogden avenue about opposite where the accident occurred. Schweers testified that the lawyer for plaintiff inquired of a number of people who were then in the store as to whether any one had seen the accident, and Schweers then told him that he saw the accident, and related to him what he claimed to have seen four years before. According to the testimony of Schweers, just before the accident occurred, he, with three other boys, had been to an ice cream store at the corner of One Hundred and Sixty-seventh street and Nelson avenue, Nelson avenue being parallel to Ogden avenue to the east. He testified that after having obtained some ice cream he and his three companions walked westerly on One Hundred and Sixty-seventh street, and that when they reached the southeast corner of One Hundred and Sixty-seventh street and Ogden avenue he looked north and saw the defendant's trolley car coming down toward them in a southerly direction. He testified that they then crossed the street and turning to the right on Ogden avenue passed up

the westerly side thereof to a point substantially opposite the place where plaintiff's intestate was struck; that they then climbed upon a fence and saw plaintiff's intestate start across the street with her head bent down a little and walking faster than a usual walk. He testified that he saw plaintiff step in front of the oncoming car when it was only three or four feet away from her coming in a southerly direction and coming quite fast, and that she was struck by the car and thrown upon the pavement. He testified that the car came to a stop after passing the point where the plaintiff's intestate was struck, about ten feet. Schweers first testified that the point where he climbed on the fence was only about fourteen or fifteen feet northerly of One Hundred and Sixty-seventh street, but when confronted by the testimony and the photographs showing that the place where the accident occurred was two hundred feet northerly of One Hundred and Sixty-seventh street, his only explanation was that he would not call it that far. I think the testimony of Schweers was entitled to little credence, and that the only testimony worthy of credence was that of the witness Alvin Rivers.

Two days after the accident occurred Rivers signed a written statement and gave the same to a representative of the defendant. Rivers read this statement, and in his own handwriting indorsed thereon: " I Read Both Sides and it is true. Alvin Rivers." At the trial Rivers testified that the statement was in every respect correct, and that he wished in no respect to change the statements therein contained. In this statement, after answering various formal questions in regard to the accident, to wit, that at the time when he observed the accident he was going north on the east roadway of Ogden avenue about fifty feet north of the north cross-walk of One Hundred and Sixty-seventh street, and that his attention was attracted by plaintiff's intestate crossing from the east to the west side of Ogden avenue; that when plaintiff's intestate started to cross the street the defendant's trolley car was about seventy feet south of One Hundred and Sixty-eighth street or about thirty feet from the point where the deceased was struck. In the statement in response to the question as to whether plaintiff's intestate was carrying anything, he stated: " I don't know, but she was holding her right hand on her right breast " and " walking very fast." In the statement, as to whether it was on the crosswalk, Rivers stated that the accident occurred about two hundred feet north of the north crosswalk of One Hundred and Sixty seventh street, and that the car, at the time she stepped on the right rail of the track, was about five feet away from plaintiff's intestate. Later on Rivers amplified his answers, as follows: " I was, Alvin

Rivers, fifty feet north of the north crosswalk of 167th Street on the east roadway when I noticed a woman leave the east sidewalk of Ogden Avenue about one hundred and fifty feet north of my taxicab (which I was driving north on the east roadway of Ogden Avenue) and about one hundred feet south of the south crosswalk of 168th Street. At the same time I saw a southbound trolley car traveling at a very slow rate [of] speed about seventy feet south of the south crosswalk of 168th Street. This woman kept walking very fast with her head down looking at the pavement and holding her right hand on her right breast, and not looking to one side or the other to see where she was going. As she reached the east rail of the southbound trolley tracks car was about five feet away, still the woman took no notice of approaching trolley, but kept right on walking very fast. As she reached the west rail of the southbound track I saw her struck by the front right bumper of the car, and thrown to the west of the car on the pavement. At this time the car hid my view from the woman. I stopped my taxicab about twenty feet north of this southbound trolley car against the east curb of Ogden Avenue. The car moved about three feet after striking woman. The operator of the car applied his brakes immediately and did all in his power to prevent this accident. When I got out of my taxicab this woman was lying about three feet to the north of the trolley car and about one foot west of the west rail of the southbound track, but I do not know how she moved this far as the car hid my view."

The only other evidence given at the trial was that of the police officer who was called to the scene of the accident and found plaintiff's intestate lying about ten or twelve feet to the rear of the car.

At the close of plaintiff's case counsel for defendant moved to dismiss the complaint on the ground that no negligence had been shown by plaintiff, and that under the evidence plaintiff's intestate was guilty of contributory negligence as matter of law. The court entertained the motion and reserved decision until after the defendant rested. Thereupon defendant rested its case and renewed its motion for dismissal of the complaint, which the court granted, and upon such dismissal the judgment appealed from in defendant's favor was entered.

The appellant insists that there was sufficient evidence upon which the jury might find the defendant guilty of negligence, and that the question of contributory negligence of plaintiff's intestate was a question of fact which should have been submitted to the jury. What such evidence is of defendant's negligence the plaintiff fails to point out. I think the court was correct in dismissing the complaint, both on the ground that plaintiff failed to establish

any negligence on the part of defendant's motorman, and, also, that plaintiff's intestate was guilty of contributory negligence as matter of law. There is no doubt that, this being a death case, the burden was upon the defendant to establish contributory negligence on the part of plaintiff's intestate. Such negligence, however, can be established by the testimony of plaintiff's witnesses, and if such testimony showed that the intestate was guilty of contributory negligence, that was all that was required of defendant. (*Sackheim* v. *Pigueron*, 215 N. Y. 62, 75.) In *Sackheim* v. *Pigueron* (*supra*) the Court of Appeals, in discussing the effect of the amended statute (section 841-b of the Code of Civil Procedure, now section 265 of the Civil Practice Act), placing the burden of proving contributory negligence in a death case upon the defendant (at p. 75), said: " Prior to the enactment of section 841-b, a plaintiff was required to satisfy the trial justice that he had established facts tending to disclose the absence of contributory negligence or a nonsuit would follow. If the motion for a nonsuit was denied, the plaintiff was still obliged to satisfy a jury of the fact by argument and inferences from the evidence before a recovery could be had. How has that procedure been changed by section 841-b of the Code? It is still essential to a recovery in a death case that the proximate cause of an injury resulting in death be due to the negligence of the party defendant causing the injury. *Upon the trial of such action, if the evidence offered on behalf of the plaintiff discloses that the deceased was guilty of negligence contributing to the injury which resulted in death, a failure of proof would exist. The defendant would not be obliged to offer evidence but might rely upon the evidence so presented by the plaintiff.*" (Italics are the writer's.)

The clear language of the Court of Appeals above quoted would seem to put at rest once and for all the contention that proof of contributory negligence of the deceased must come from the defendant's witnesses. The testimony of Rivers, and, indeed, of Schweers conclusively shows that plaintiff's intestate, at the time she was struck, took no precautions whatever to observe the oncoming trolley car or for her own protection. Both Rivers and Schweers testified that the intestate, with her head bowed, was walking rapidly directly across the street two hundred feet northerly of One Hundred and Sixty-seventh street and one hundred feet southerly of the One Hundred and Sixty-eighth street crossing, and that she walked immediately in the path of the oncoming trolley car driven by the defendant's motorman. Rivers testified that at the time the car struck plaintiff's intestate it was traveling at about twenty-five miles an hour, and that when she stepped onto the south-bound track the car was only about five feet away from her. Schweers testified that when plaintiff's intestate stepped

on the south-bound track the car was only three or four feet away from her. Rivers testified positively that plaintiff's intestate looked neither to the right nor the left, and there is no testimony on the part of Schweers that she looked at all. Under such circumstances, if there ever was a case of contributory negligence, I think it was proven in this case. The accident happened in broad daylight, and there was nothing to interfere with the vision of plaintiff's intestate. I think, under the decisions, she was clearly guilty of contributory negligence as matter of law. (*Neuman* v. *Union R. Co.*, 243 N. Y. 249; *Ford* v. *New York City Interborough R. Co.*, 236 id. 346; *Knapp* v. *Barrett*, 216 id. 226; *Goldstein* v. *Union Railway Co.*, 180 App. Div. 417; affd., 230 N. Y. 570.) In the case of *Knapp* v. *Barrett*, Judge CARDOZO, writing for the Court of Appeals, said (at p. 230): " We have repeatedly held that one who crosses a city street without any exercise of his faculty of sight, is negligent as a matter of law [*Barker* v. *Savage*, 45 N. Y. 191; *Peterson* v. *Ballantine & Sons*, 205 N. Y. 29; *Perez* v. *Sandrowitz*, 180 N. Y. 397; *McClain* v. *Brooklyn City R. R. Co.*, 116 N. Y. 459, 470; *Reed* v. *Met. St. Ry. Co.*, 180 N. Y. 315; *Volosko* v. *Interurban St. Ry. Co.*, 190 N. Y. 206; *Zucker* v. *Whitridge*, 205 N. Y. 50; *Mastin* v. *City of New York*, 201 N. Y. 81]." Counsel for appellant cites several cases in his brief upon which he relies. These cases, upon examination, clearly have no application whatever to the circumstances in the case at bar.

The only allegation contained in the complaint as to the negligence of defendant was that the " agents, servants and/or employees so negligently, recklessly and carelessly conducted themselves in the management, operation and control of the aforesaid trolley car, and without warning to Sarah Porter, collided with the person of Sarah Porter, throwing her to the pavement."

The testimony of Rivers was that he saw the oncoming car traveling at a very slow rate of speed, and that plaintiff's intestate stepped in front of the oncoming car when it was only five feet away. The Court of Appeals and this court have repeatedly held that under such circumstances the injured person is guilty of contributory negligence as matter of law. The Appellate Division in *Byrnes* v. *Brooklyn Heights R. R. Co.* (148 App. Div. 794, 796) said: " Pedestrians can and do stop just short of the danger line in thousands of instances every day, and unless there is something to indicate to the motorman that a different result is contemplated, there is no reason why he should not operate his car at the usual rate of speed at points other than street crossings."

In *Neuman* v. *Union R. Co.* (*supra*) Chief Judge HISCOCK, writing for the Court of Appeals, said (at p. 253): " In view of the fact that this accident happened between street intersections the rule of law ordinarily would be that the trolley car had the right

of way and that the obligation rested upon the intestate to regulate his movements in subordination to such right."

There certainly was no duty on the part of this motorman to stop his car after he saw if, indeed, he did see (of which the record is barren of any evidence), plaintiff's intestate about to cross his track or to anticipate that she would step immediately in front of his car. (*Barney* v. *Metropolitan Street R. Co.*, 94 App. Div. 388.) In that case the court said (at p. 396): "If the driver had been looking at her all the time, he was not required to attempt to stop his car until it became manifest that she was about to step in front of it. (*Kappus* v. *Met. St. Ry. Co.*, 82 App. Div. 13.) Until that time, the point being between crossings, he had a right to assume that she would give the car the right of way. (*Thompson* v. *Buffalo Railway Co.*, 145 N. Y. 196; *Weiss* v. *Met. St. Ry. Co.*, 33 App. Div. 221; affd., 165 N. Y. 665.] "

It certainly was not within the power of defendant's motorman to stop his car after he saw plaintiff's intestate stepping upon the track five feet in front of the car, as testified to by plaintiff's witness Rivers, or three or four feet in front of the rapidly oncoming car, as testified to by plaintiff's witness Schweers. The case at bar is much stronger than that of *Stern* v. *Brooklyn Heights R. R. Co.* (140 App. Div. 109) where the Appellate Division said (at p. 111): "But, assuming that the danger was apparent at fifty feet, there is no evidence that the car could have been stopped in time to have averted the accident, and the defendant was not bound to do things which it could not do, * * *."

In *Albrecht* v. *Rochester, S. & E. R. R. Co.* (205 N. Y. 230) the Court of Appeals wrote (at pp. 234, 235): "Assuming that the question of the negligence of the parents in permitting the child to escape on to the railroad tracks was a question for the determination of the jury, still we entertain the view that the plaintiff failed to show that the defendant's motorman was negligent. Not a witness was called, nor attempt made on the part of the plaintiff, to show that the car could have been stopped in time to save the child. It is true that after the child, approaching the track, came into the view of the motorman, it became his duty to use his best endeavors to save the child and not wantonly or carelessly run it down, but the burden of showing negligence rested upon the party asserting it, and it, therefore, became the duty of the plaintiff to show either by experts or other witnesses that the car could have been stopped in time to have saved the child. This is not a case in which the court or jury can take judicial notice of the time within which a car could be stopped. Such time depended upon the testimony that should have been given upon the trial."

In *Neuman* v. *Union R. Co.* (*supra*) Chief Judge Hiscock, writing further, said (at pp. 255 and 256): " * * * The insistent claims by plaintiff of negligence are predicated on the facts that defendant's car was running at a rapid rate of speed and that no gong was sounded. Under all of the conditions we do not regard either of these facts or both of them together as establishing negligence. Daylight made the car easily if not inevitably visible to intestate if he looked before going upon the track and, therefore, a gong was not necessary. * * * While as has been suggested it may have been incumbent upon the defendant to use extra precautions to guard against collisions in certain conditions, as for instance where an automobile was forced by street conditions into an unusual or awkward position, there was no rule which called upon the motorman to anticipate unusual or careless movements upon the part of a foot passenger who was in full control of his movements until something happened which reasonably led to such anticipation. As we have already pointed out we do not think that the conduct of decedent furnished any such warning until it was too late for the motorman to avert the accident."

The evidence in the case at bar conclusively shows that the trolley car of the defendant was not traveling at an undue rate of speed, although on a down grade, because, upon the application of the brakes by defendant's motorman, the car was brought to a stop when it had passed plaintiff's intestate only from three to ten feet. There is no ordinance in New York city governing the speed of trolley cars between street crossings, and it seems to me absurd to claim that defendant's motorman was bound to anticipate that any pedestrian crossing the street between blocks would step immediately in front of his oncoming car.

I think the judgment appealed from was correct, and that plaintiff established no right of recovery, and that the court very properly dismissed the complaint at the close of the evidence. Unless we are to entirely ignore the well-settled doctrine that contributory negligence will, as matter of law, prevent any recovery of damages by one injured or by the personal representatives in a death case, the judgment of the Trial Term should be upheld.

The judgment appealed from should be affirmed, with costs to defendant, respondent, against plaintiff, appellant.

Finch, P. J., and Townley, J., concur; Martin and O'Malley, JJ., dissent and vote for reversal and a new trial.

O'Malley, J. (dissenting). Plaintiff seeks damage for the death of his intestate alleged to have been caused by defendant's negligence. The deceased met her death by coming into collision

with one of the defendant's street cars. At the time she was crossing from the easterly to the westerly side of Ogden avenue at a point about two hundred feet north of East One Hundred and Sixty-seventh street, New York city. The complaint was dismissed at the close of the plaintiff's evidence on the ground that the deceased was shown to be guilty of contributory negligence as a matter of law.

We are of opinion that this question was for the jury and that the judgment should be reversed and a new trial ordered. The burden of establishing contributory negligence was upon the defendant. (Civ. Prac. Act, § 265.) Plaintiff's evidence would have justified a finding that the defendant's car was traveling at a rate of speed estimated from fifteen to thirty miles an hour on a steep down grade and at a rate of twenty-five miles when it hit the deceased. The block in which the intestate was crossing was an unusually long one, estimated to be about three ordinary city blocks. The deceased resided on the easterly side of Ogden avenue and was seen by witnesses to leave the easterly curb and start rapidly across to the westerly side. There was no evidence tending to show that she looked after she left the curb, plaintiff's evidence being to the effect that she looked straight ahead in the direction in which she was crossing.

The jury would have been justified in finding that she had reached the westerly rail of the downtown track on which the trolley car was traveling before she was hit. Plaintiff's witness Rivers testified to this effect. While it is true that a statement given by him to the defendant shortly after the accident tended to impeach his credibility, in that he admitted having said in the statement that the deceased stepped on the easterly rail at a time when the trolley was but five feet away from her, his credibility was for the jury. They might well have accepted his testimony given at the trial rather than the prior statement.

Plaintiff's evidence tended to show that the defendant's motorman gave no signal and there was other evidence which would warrant a finding that he did not see the deceased before the accident. After the collision his car traveled a distance of from three to eighteen feet beyond its own length before it was stopped.

The testimony of the witness Rivers as to the relative position of the intestate and the trolley car finds support in other established facts. The deceased was hit by the right front side of defendant's trolley car and her body was found after the accident to the west of the westerly rail. This fact tends to support the testimony given by the witness on the trial, rather than that contained in his prior statement. If the deceased did not reach the easterly rail until

the trolley car was five feet away, unquestionably she would have been thrown to the left, and to the east of the track, rather than to the right where her body was found.

Whether it was negligence on the part of the intestate to fail to look after she had once left the curb was for the jury. ( *Knapp* v. *Barrett*, 216 N. Y. 230, 231.) They might well have found that the defendant's trolley car was seen by the deceased before she left the curb and that it was at a sufficient distance to warrant her in believing that she could safely cross. That she misjudged the speed of the trolley car would not necessarily defeat her right to recover.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, J., concurs.

Judgment affirmed, with costs.