[1] Reported in 17 N.W.2d 656.
Appeal by Marguerite C. Andrews from an order of the district court for St. Louis county denying her motion for amended findings or a new trial. The findings, among other things, approve the account when amended as directed of the trustee of the trust created under the will of Albert H. Comstock, allow certain costs, expenses, and compensation to the trustee, deny costs and expenses of the beneficiary inclusive of certain fees, authorize the trustee to invest in common or preferred corporate stock, deny the beneficiary's motion for vacation of an ex parte order heretofore made confirming appointment of the trustee, and further deny the beneficiary's motion for an order removing said trustee for cause. This litigation arises from the objections of Marguerite C. Andrews, the beneficiary, to the granting of the trustee's petition for the allowance of its account from the beginning of the trust on January 30, 1928, to March 15, 1941.
Albert H. Comstock died in Duluth on November 22, 1926. By his will dated April 21, 1922, and codicil dated April 26, 1926, he appointed the First National Bank of Duluth (since changed by merger to the First and American National Bank of Duluth) both executor of the will and trustee of the trust thereby created. Probate administration was concluded with a final order of distribution dated January 30, 1928, and on this date the trustee assumed its duties of administering the trust.
The original corpus of the trust consisted of personal property of the fair market value of $162,290.48, inclusive of 678 shares of the common stock of Marshall-Wells Company of a market value of $57,630, and 356 shares of the common stock of Clyde Iron Works of the market value of $32,040.
As to investments generally, paragraph 3 of article 6 of decedent's will reads as follows:
"Said trustee and its successors are authorized and empowered from time to time to invest and reinvest the funds of said trust in stocks, bonds or first mortgages on real estate, such mortgages *Page 329 
not to exceed fifty per cent (50%) of the fair value of the mortgaged property. All such investments must be in safe, sound and conservative securities or other property, such as the bank considers proper for the investment of the bank's own funds, and with a view at all times of keeping the principal perfectly safe."
Paragraph 4 of article 6 contains the following admonition as to the common stock of Marshall-Wells Company:
"At the time of the execution of this will a large part of my estate is invested in the common stock of the Marshall-Wells Company. It is my suggestion to the trustee that said stock be gradually converted into or exchanged for the preferred stock of said Company or into the preferred stock of other companies equally good, or into bonds or first mortgages, all of the character hereinabove mentioned, all at such times, in such amounts, and upon such terms as to the trustee may seem advantageous. It is my desire that the trustee, before selling or so converting or exchanging any of the common stock of the Marshall-Wells Company, shall consult with the person then entitled to receive the income from said trust estate with reference thereto, but the final and absolute power of decision in said matter and in all matters relating to said trust and to the acquisition, management and disposition of its property, shall rest with the trustee, whose decision shall be final."
Decedent was survived by Elizabeth H. Comstock, his wife, Marguerite C. Andrews, his daughter, and Elizabeth Anne Andrews (now Elizabeth Anne Andrews Madden), his granddaughter. The will provided that the net income from the trust should be paid to decedent's wife for life; that upon her death it should be paid to his daughter for life; upon the daughter's death it should be paid to the granddaughter for life; and, upon the latter's death, certain other provisions were specified for payment until the termination of the trust.
From the inception of the trust on January 30, 1928, to January 1, 1931, David Williams, who served either as president or as chairman of the board of directors of the trustee, personally administered *Page 330 
the trust without any official consultation with the trustee's board of directors or with any trust committee of the trustee. At no time was the advice of the court sought. Throughout this period, the trustee, in its banking capacity, carried on constant business dealings on a large scale with the Marshall-Wells Company and its subsidiaries and with the Clyde Iron Works. In 1928, the trustee made total loans of $225,000, in 1929 loans of a total sum of $275,000, and in 1931 loans totalling $250,000 to Marshall-Wells Company with its stock as collateral. Substantial loans were also made to the Clyde Iron Works with its stock as collateral. Throughout 1928, 1929, and 1930, certain directors of the Marshall-Wells Company were also directors of the bank (the trustee herein). Decedent, long prior to his death and at and long prior to the execution of his will and the codicil, knew of the interlocking directorates of the bank and the Marshall-Wells Company and also knew that it was customary for the bank to make substantial loans to said company upon its stock as collateral and similar loans to the Clyde Iron Works. In fact decedent, while living, was the financial officer of the Marshall-Wells Company and as such negotiated its bank loans. During 1928, 1929, and 1930, the trustee, for and in behalf of the trust estate, purchased from itself or its affiliate, the First National Duluth Company, certain bonds and securities upon which it received certain profits. On June 17, 1940, the trustee repurchased from the trust estate these bonds and securities at the price for which they were originally sold to the trust. On February 6, 1931, the trustee purchased from a third party for the trust estate $2,000 worth of bonds of the Chicago North Western Railway, and these bonds were also repurchased by the trustee on June 17, 1940, on the assumption that they were not a suitable investment for the trust.
The trustee did not petition the court for a confirmation of its appointment as trustee until March 26, 1941. The appointment was confirmed by the court on March 28, 1941. On April 15, 1941, the trustee petitioned the court for the allowance of its final account covering the period from the date of the inception of the *Page 331 
trust to and including March 15, 1941. On November 13, 1943, the trustee moved the court for an order amending its account by surcharging itself with the sum of $5,873.51 (followed by an additional surcharge of $799.89 conceded by the trustee in the course of the trial), constituting the difference between the interest actually collected by the trust estate on the bonds and securities purchased from the trustee bank (and later repurchased from the trust) and the amount of interest which the trust estate would have received if investments had been selected yielding a rate of four percent per annum. The petition for the allowance of the trustee's account and the objections thereto made by appellant did not come up for hearing before the court until January 3, 1944.
At the inception of the trust, the 678 shares of common stock of the Marshall-Wells Company, according to probate court appraisal, were of a market value of $57,630, and the 356 shares of common stock of the Clyde Iron Works were of a market value of $32,040. It was estimated as of March 15, 1941, the final date of the trustee's account, that said stock had dropped to a total value of $3,051 and $890 respectively. At the hearing on the final account, the president of the Marshall-Wells Company testified that the book value of the common stock, after making deductions for the back dividends on the preferred stock, was somewhere around $125 per share or more.
The trial court by its order and findings of fact, as amended, allowed the trustee's account, subject, however, to a surcharge of $7,101.16 as of March 15, 1941, with interest at six percent per annum on $887.37 thereof and with interest at three percent on the balance. The surcharge was made by the court to reimburse the trust estate for profits made by the trustee for its own benefit on bonds and securities purchased from itself, and for interest at six percent on said profits, and further to reimburse the trust estate for the difference in the actual amount of interest received on said investments and the interest that the trust estate should have received at a reasonable rate of four percent per annum, if the money used to purchase said bonds and securities had been properly *Page 332 
invested. The trial court found generally that, with the exception of the investments covered by the surcharge, the trustee had handled the affairs of the trust in a careful, prudent, honest, and intelligent manner and had not been guilty of negligence.
1. Appellant charges a breach of trust arising from the alleged negligence of the trustee in failing to sell or convert the common stock of the Marshall-Wells Company and the Clyde Iron Works in time to avoid the loss resulting from the 1929 stock market crash. The principles governing the conduct of a trustee in disposing of securities received from the creator of the trust are clearly set forth in Fortune v. First Trust Co.200 Minn. 367, 378, 274 N.W. 524, 529, 112 A.L.R. 346, wherein the court quoted with approval the New York Court of Appeals in Matter of Clark, 257 N.Y. 132, 136, 177 N.E. 397,398, 77 A.L.R. 499, 502, as follows:
"* * * 'the just and true rule is, that the trustee is bound to employ such diligence and such prudence in the care and management, as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs.' (King v. Talbot, 40 N.Y. 76, 84, 85.) The statement has been frequently approved. (Matter of Weston, 91 N.Y. 502,511; Costello v. Costello, 209 N.Y. 252, 261, 103 N.E. 148.) In determining whether the acts of a trustee have been prudent, within the meaning of the rule, we must 'look at the facts as they exist at the time of their occurrence, not aided or enlightened by those which subsequently take place' (per Peckham, J., in Purdy v. Lynch, 145 N.Y. 462, 475,40 N.E. 232, 236); for it is an obvious truth that 'a wisdom developed after an event and having it and its consequences as a source is a standard no man should be judged by' (per Collin, J., in Costello v. Costello, supra, at p. 262); and it is impossible to say that trustees are wanting in sound discretion 'simply because their judgment turned out wrong' (per Holmes, C. J., in Green v. Crapo, 181 Mass. 55, 58, 62 N.E. 956, 957). We must distinguish also between the acts of trustees in making investment of trust funds, and their acts in making, or failing to make, prompt disposition *Page 333 
of securities received from the hands of the creator of the trust. (Matter of Weston, supra; Jones v. Jones, 50 Hun 603, 2 N Y S. 844; Matter of Mercantile Trust, 156 App. Div. 224,141 N.Y. S. 460; Matter of Chapman [1896], 2 Ch. 763.) Self-evidently the purchase of a speculative stock by a trustee is one thing; the retention of such a stock awaiting the arrival of a favorable opportunity to sell, is quite another; the former would constitute negligence; the latter, regarded prospectively, might be prudent, although in retrospect it might seem to have been a grievous error. Furthermore, the distinction between negligence and mere error of judgment must be borne in mind. 'Trustees acting honestly, with ordinary prudence and within the limits of their trust, are not liable for mere errors of judgment' (per Lindley, J., in Matter of Chapman, supra, at p. 776); a trustee should not be held liable 'for unfortunate results which he could not be expected to foresee and was powerless to prevent' (Ormiston v. Olcott,84 N.Y. 339, at p. 347)."
2. Before applying these principles we must determine the discretion granted to the trustee by testator in his will.
"In that determination" (quoting the court in In re Trust of Watland, 211 Minn. 84, 91, 300 N.W. 195, 198), "we are to be guided by the well-known principle that the entire instrument must be considered, 'aided by the surrounding circumstances, due weight being given to all its language, with some meaning being given, if possible, to all parts, expressions and words used, discarding and disregarding no parts as meaningless, if any meaning can be given them consistently with the rest of the instrument.' Dumaine v. Dumaine, 301 Mass. 214, 218,16 N.E.2d 625, 628, 118 A.L.R. 834, 839; In re Trusteeship Under Will of Ordean, 195 Minn. 120, 261 N.W. 706."
As above quoted, in paragraph 3 of article 6 of his will, testator in express language authorized the trustee "to invest and reinvest the funds of said trust in stocks, bonds or first mortgages * * *." By paragraph 4 of article 6, he explicitly stated that a large *Page 334 
part of his estate was then "invested in the common stock of the Marshall-Wells Company," and he suggested to the trustee that said stock "be gradually converted into or exchanged for the preferred stock of said Company or into the preferred stock of other companies equally good, or into bonds or first mortgages * * *." (Italics supplied.) In this same paragraph, he expressed a "desire that the trustee, before selling or so converting or exchanging any of the common stock of the Marshall-Wells Company," should "consult with the person then entitled to receive the income from said trust estate with reference thereto," but that the final and absolute power of decision should remain with the trustee. By construing together these two paragraphs of the will, considerable light is thrown upon testator's intent. It is significant that he made no mention of the common stock of the Clyde Iron Works but limited his suggestion for a gradual conversion to the Marshall-Wells Company stock. If he had not intended common stock as a suitable and proper investment, it is unlikely that he would have omitted any and all mention of the common stock of the Clyde Iron Works (as well as of the common stock of several other companies included in the assets of the estate) when he specifically suggested a gradual conversion. This intent is not negatived by the general language to the effect that all investments must be in safe, sound, and conservative securities such as the bank would consider proper for its own funds.
With common stocks authorized as a proper trust investment under the will, what did testator further intend in suggesting that the Marshall-Wells Company stock "be gradually converted"? No part or word of a will is to be disregarded as meaningless if any meaning can be given consistently with the meaning of the instrument as a whole. The testator's use of the word "gradually" is not to be taken lightly and as of no significance, and this holds true of his express use of the word "suggestion," when he could have used the word "direction," in discussing a possible future conversion of the stock. He merely suggested that the stock be converted, and then, in addition to his use of the word "gradually," he further *Page 335 
whittled down his suggestion by specifically providing that it was his desire that the stock should not be converted or exchanged without first consulting the person entitled to receive the trust income. Testator was an able and alert businessman, who certainly did not insert this provision for consultation as a futile and meaningless gesture. It is reasonable that it was his intent that some weight should be given to the opinion of the person consulted. In vesting the final and absolute power of decision in the trustee, testator intended to, and did, repose in such trustee a very wide discretion with respect to the disposal of the Marshall-Wells stock, subject, however, to his express desire that his suggestion should, if acted upon at all, be carried out only on a gradual basis after giving some weight to the wishes of the person entitled to the trust income. A suggestion so circumscribed and emasculated is scarcely indicative of an intent to express concern over how long the common stock should be held as a trust asset. It is scarcely more than a suggestion that the trustee give, in the normal and routine turnover of trust estate investments, some priority in consideration to the desirability of converting the Marshall-Wells Company common stock into a preferred stock. It is also significant that, in suggesting a conversion of the Marshall-Wells common stock, he provided that the same should be "converted into or exchanged for the preferred stock of said Company or into the preferred stock of other companies equally good * * *." (Italics supplied.) Testator thereby adopted the Marshall-Wells Company as a yardstick of financial stability.
3. Was the trustee derelict in failing to convert or sell the Marshall-Wells stock? Although common stock was an authorized and proper investment under testator's will, we shall assume that his suggestion, though weak and restricted, created in some small degree a duty to effect a conversion within reasonable time. The following language of Restatement, Trusts, § 230, comment b, pertaining to property included in the trust at the time of its creation and which could not be a proper investment for the trustee to make, is helpful: *Page 336 
"b. Time of conversion. When there is a duty to convert trust property, the conversion must be made within a reasonable time after the creation of the trust. Ordinarily any time within a year is reasonable, but under some circumstances a year may be too long a time and under other circumstances a trustee is not liable although he fails to effect the conversion for more than a year. Thus, if there is a ready market for the property, it would usually be improper to delay the sale for a year. If, however, the property even though it has a ready market could not be sold except at a sacrifice, it may be proper for the trustee to delay the sale for more than a year. The question in each case is whether under all the circumstances the trustee acted with prudence in delaying the sale."
"* * * what is a reasonable time for the sale of nonlegal securities by a trustee * * * after receiving them as trust property depends upon the circumstances of the particular case, and is ordinarily a question of fact." Annotation, 122 A.L.R. 803. Also, see, annotation, 37 A.L.R. 563.
"As each case is in its circumstances sui generis, the decision must depend on the circumstances, and for this reason, seldom, if ever, is the decision in one case an absolutely controlling precedent when another arises." Shipley's Estate (No. 1) 337 Pa. 571, 573, 12 A.2d 343, 344.
The Marshall-Wells stock was held by the trustee for approximately 18 months prior to the stock market crash in October 1929, or for a total period of approximately two and one-half years if we include the time which the trustee held said stock in its capacity as executor of testator's estate. The evidence indicates there was no ready market for this stock. There is no appearance of an abuse of the wide discretion vested by the testator in the trustee. The trustee consulted the then beneficiary, Mrs. Comstock, with regard to the question of selling the stock, and she in response wrote the trustee's representative as follows: *Page 337 
"June 24, 1929
"Dear Mr. Williams:
"Some time ago there was something said about converting our common stock of Marshall-Wells into preferred. This is to say we do not want anything to be done about it for the present.
 "Sincerely, "Mrs. Comstock"
A reasonable inference is justifiably drawn from the surrounding circumstances that Mrs. Comstock, and also Mrs. Andrews, the objector herein, had full knowledge of the facts; that nothing was concealed from them; and that they both disapproved of any conversion of the stock. During this very period, as well as prior thereto and after, Mrs. Andrews personally owned Marshall-Wells common stock and did not sell any of it; and this is likewise true of Elizabeth Anne Madden, wife of objector's chief counsel. There was nothing in the entire picture which would have led a reasonably prudent man to foresee the unprecedented and catastrophic stock market crash of 1929 and the prolonged depression which followed. Cases of this kind must be viewed, not retrospectively, but from the position in which the trustee found itself in a suddenly upset financial world. "There is no rule of law which requires that an executor's foresight must measure up to the standard of a legatee's hindsight." Shipley's Estate (No. 1) 337 Pa. 577,12 A.2d 346.
The evidence sustains the findings of the trial court that the trustee was not interfered with or prevented from acting fairly, impartially and honestly, and for the best interests of the trust estate and the beneficiaries thereof, by reason of the interlocking directorates, the existence of large loans made by the bank to the Clyde Iron Works and to the Marshall-Wells Company and its subsidiaries, and as a result of the manner in which the trust was administered for the trustee by David Williams. Likewise, the evidence fully sustains the findings to the effect —
"* * * That the trustee was not derelict or negligent in its duty as trustee by reason of its failure to dispose of stocks of certain *Page 338 
local corporations or convert the common stock of said corporations to preferred stock in the same corporations or others, and that any loss to the trust estate that was caused by reason of the retention of said common stocks was not reasonably foreseeable or was due to causes over which the trustee had no control, and by the use of reasonable diligence, intelligence and foresight could not have foreseen or averted."
4. Appellant's contention that the trial court erred in failing to surcharge the trustee's account for interest on certain quarterly payments which she might have received if the trustee had not invested in bonds purchased from itself and later repurchased is without merit. In Malcolmson v. Goodhue County Nat. Bank, 200 Minn. 486, 488, 274 N.W. 652, 653, it was held:
"* * * Whether interest will be allowed when the trustee's account is surcharged and at what rate is within the discretion of the court and must depend upon the facts and circumstances in each particular case."
5. The court below is correct in refusing to allow compound interest on the amounts surcharged to trustee's account. No fraud, subterfuge, gross negligence, or self-enrichment is involved. Whatever mistakes the trustee made in purchasing certain bonds from itself were made in good faith and upon the advice of counsel. The just and true rule is that "simple interest only should be charged in cases where there has been no fraud or flagrant breach of trust" (St. Paul Trust Co. v. Strong, 85 Minn. 1, 11, 88 N.W. 256, 260), unless (1) the trustee "has received compound interest" or (2) "he has received a profit which cannot be ascertained but is presumably at least equal to compound interest" or (3) "it was his duty to accumulate the income." Restatement, Trusts, § 207. Also, see, 4 Bogert, Trusts and Trustees, § 863. In Malcolmson v. Goodhue County Nat. Bank, 200 Minn. 488, 274 N.W. 653, it was held:
"* * * Ordinarily, when a trustee is held liable for interest, the interest is awarded upon equitable principles as compensation for damages to the cestui 'to make him whole, to place him in the *Page 339 
position he would have been in if the trustee had performed his duty.' 4 Bogert, Trusts Trustees, p. 2503, § 863. What is called interest is really damages, computed in terms of interest. Mason v. Callender, Flint Co. 2 Minn. 302 (350), 72 Am. D. 102."
6. The trustee cannot be surcharged for any increased tax liability resulting to appellant from the payment of accumulated income in a single tax year, which income (represented by the surcharge to trustee's account) might have been paid to her over a period of years. The increased tax liability alleged by appellant is based on the theory that she did not receive the money each year when due. It is elementary that the only measure of damages for failure to pay money is not the consequential damages resulting from the peculiar circumstances of the payee, but the lawful interest accrued upon the amount due. Beck v. Wilbois, 194 Iowa 708,190 N.W. 376; Mercantile Factors Corp. v. Warner Bros. Pictures, Inc.215 App. Div. 530, 214 N.Y. S. 273. The lower court, in its discretion, properly fixed the entire amount of damages in the form of interest surcharged against the trustee's account.
7. The trial court, in allowing the trustee's final account with certain exceptions, approved fees for the services of the trustee in the sum of $1,538. This allowance involved no abuse of discretion. The facts of this case do not bring it within the rule that a trustee should be denied compensation where he is guilty of fraud, bad faith, or inexcusable negligence resulting in loss to the trust estate. It was justifiable for the court to allow reasonable compensation for the trustee's routine services throughout the years prior to the litigation. In re Trusteeships Under Last Will of Drake, 195 Minn. 464,468, 263 N.W. 439, 442, 101 A.L.R. 801. No attorney's fees were allowed to the trustee.
8. Although the trustee's account was surcharged several hundred dollars, the court below denied appellant an allowance of attorneys' fees and costs as a charge against the estate. The court specifically found that appellant's objections contained many items that were without merit, and that if the objections had been limited *Page 340 
to meritorious ones the differences between the trustee and the objector could probably have been settled without any lawsuit. It is within the discretion of the trial court, upon the facts in each case, to determine whether or not attorneys' fees should be allowed, and in this case we find no abuse of discretion. In the case of In re Trusteeship of Clark, 174 Iowa 449,457, 154 N.W. 759, 761, 156 N.W. 353, involving an appeal by the trustee from an order of the trial court allowing attorneys' fees for the cestui as a charge against the trust estate, it was held:
"* * * Equally clear is it that here, as elsewhere, while the financial value of the benefit obtained for the estate is to be taken into consideration in making an allowance for the services, that is not all that is involved, and something must be trusted to the trial court on whether efforts made were reasonably and justifiably made, and what is just compensation therefor, even though it transpire, at the end of proper litigation, that the financial benefit is not as large as is desirable. And though it should be taken into consideration what proportion the allowance bears to the fund upon which it is charged, that cannot be controlling."
9. There was no abuse of discretion in the court's refusal to remove the trustee. The trust had been administered in a careful, prudent, honest, and intelligent manner, and the evidence reveals that the mistakes made by the trustee in purchasing certain bonds from itself were made in good faith and upon the advice of counsel.
10. The order of the trial court authorizing the trustee to invest trust funds in common or preferred stocks was in conformity to the investment provisions contained in testator's will and, in effect, was merely a confirmation of power already possessed by the trustee. The court's order of authorization was also in conformity with L. 1943, c. 635.
Affirmed.
MR. JUSTICE MAGNEY took no part in consideration or decision of this case. *Page 341