In the Matter of the TRUST OF G. Burton BROWN Created Under Agreement Dated October 15, 1974, Between G. Burton Brown, Grantor, and Norwest Bank Midland National Association and Ralph B. Brown, Trustees.

No. C9–85–1568.

Court of Appeals of Minnesota.

Feb. 11, 1986.

Review Denied April 18, 1986.

Steven A. Brand, St. Paul, for respondent Norwest Bank Midland, N.A.

Charles A. Cox and Gary Crawford, Minneapolis, for appellant Phyllis M. Brown.

Heard, considered, and decided by POPOVICH, C.J., and RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

G. Burton Brown signed a will and trust agreement in 1974. He died in 1984. The trustee, Norwest Bank Midland, N.A., petitioned the trial court for instructions concerning the proper funding of the marital trust created by the trust agreement. The trial court issued an order instructing the trustee as requested by Norwest Bank Midland, from which Phyllis Brown, Burt Brown's widow, appeals. We affirm.

## FACTS

Burton Brown signed his will and "insurance trust agreement" on the same date in 1974. The trust agreement was between Burton Brown and Norwest. It named Norwest as trustee. Burton Brown made the trustee beneficiary of various life insurance policies and employment benefits. These constituted the bulk of Burton Brown's estate. The trust is divided into two shares, a "marital trust" and a "G. Burton Brown Family Trust."

The will is a "pour-over" will. Upon the testator's death it pours over into the trust assets held by the testator in his own name before his death. The bulk of Burton Brown's assets passed into the trust before Brown's death. In that manner, the bulk of his estate was excluded from the probate estate. The will specified certain assets to the marital trust and certain assets to the family trust.

The controversy concerns interpretation of the trust, primarily language in article two:

Upon the death of the Grantor, if PHYL-LIS M. BROWN shall be his surviving wife, the Trustee may receive from the Grantor's *probate estate assets* which qualify and are set aside for the maximum marital deduction therein, which assets shall be held by the Trustee in trust and may for convenience be called the "MARITAL TRUST."

(emphasis added.) The probate assets amount to only 5% of the gross estate [1] and Phyllis Brown therefore is left with relatively little in the marital trust. Burton Brown's gross estate was worth approximately $876,994.80. Of this, Phyllis Brown received $149,223.34 of assets which passed directly to her because they were held in joint tenancy and $11,851.63 of probate assets which poured over into the marital trust. The family trust holds the remaining assets.

The trial court instructed the trustees: 1) That the marital trust be funded only with assets received from or allocated to the trustee by the personal representative of the estate of G. Burton Brown. 2) That all other assets received by the trustee or otherwise held by it as trustee should be allocated to the G. Burton Brown Family Trust.

Appellant, Phyllis Brown, claims alternatively that (1) the dominant intent of the trust agreement requires the marital trust to be "fully funded" with nonprobate assets; (2) the terms of the trust agreement are ambiguous and require construction with the aid of extrinsic evidence and this evidence requires funding the marital trust with nonprobate assets; (3) the trial court erred by ignoring evidence of surrounding circumstances; and (4) if the trust terms are not ambiguous, they should be reformed. Respondent, Norwest, claims that the funding language is unambiguous and permits the marital trust to be funded only with probate assets and forbids the trustee from adding nonprobate assets in the trust to the marital trust. The living beneficiaries apparently agree with Phyllis Brown's interpretation. The trustee opposes them in order to protect contingent unidentified remaindermen of the family trust.

## ISSUES

1. Are the terms of the trust agreement ambiguous?

---

1. The "gross estate" includes assets held by Burton Brown and transferred to the trust before his death, i.e. the insurance policies and employment benefits.

2. Does the trial court's interpretation of the trust agreement contravene the settlor's dominant intent?

3. Did the trial court err in not reforming the trust?

## ANALYSIS

Where "the critical evidence is documentary, there is no necessity to defer to the trial court's assessment of the meaning and credibility of that evidence. * * * 'we are as able as he to determine credibility, and so we may disregard his finding.' " *In Re Trust Known as Great Northern Iron Ore Properties,* 308 Minn. 221, 225, 243 N.W.2d 302, 305 (1976) (citations omitted). The critical evidence here is the trust agreement and the will, and therefore this court need not defer to the trial court's decision.

### I.

*Ambiguity*

██ Appellant cites references to "maximum marital deduction," which allegedly create ambiguity in article two's direction to fund the marital trust from probate estate assets. Article eleven of the trust authorizes certain reallocation of assets:

> Since the value of the Grantor's adjusted gross estate and the assets therein cannot be finally determined for tax purposes until his Federal Estate Tax Return is audited and accepted by the Internal Revenue Service, the Trustee is authorized, after such audit shall have been made and final tax values established, to re-allocate assets to the MARITAL TRUST or the G. BURTON BROWN FAMILY TRUST, as the case may be, so that assets of the MARITAL TRUST will be the maximum marital deduction allowable and no more when taken in the aggregate with all other marital deductions allowed.

Appellant claims that this provision shows that Burton Brown intended the marital trust to qualify for the maximum marital deduction allowable. This would not be possible unless the trustees are permitted to allocate nonprobate assets to the marital trust. We agree with the trial court that this provision is designed merely to realign assets after the audit of the federal estate tax return by the Internal Revenue Service if the values used are altered by the audit process. The provision authorizes minimal adjustments. It does not refer to funding and cannot be said to create an ambiguity in the funding language of article two. It provides a mechanism for adjusting funding once the audit is completed and final values are ascertained.

Appellant also cites a reference to "maximum marital deduction" in the will. The will divides the residuary estate into two shares, one being "fifty per centum (50%) of the value of [the] adjusted gross estate, but no more than the maximum marital deduction allowable." Appellant claims that this shows Burt Brown's intent to obtain what was, at that time, maximum marital deduction of 50% of his entire gross estate. However, this provision disposes only of probate assets because it is placed in the will. It cannot govern division of the nonprobate assets in the trust.

The article two provision funding the trust is not ambiguous. We will not read an ambiguity into the instrument in order to draft for the beneficiaries an estate plan which minimizes taxes.

Had ambiguity, latent or patent, existed in the instrument, extrinsic evidence would have been admissible to resolve the ambiguity. *In Re Tweedie's Will,* 234 Minn. 444, 450, 48 N.W.2d 657, 660 (1951) (citation omitted). Because the will is not ambiguous, we affirm the trial court's refusal to consider extrinsic evidence.

### II.

*Interpretation of trust agreement as a whole*

██ Appellant claims that when interpreted as a whole, the trust agreement requires the marital trust to be funded with assets from Burton Brown's gross estate, in addition to assets from the probate estate. " '[I]n construing the will the important thing is to ascertain the intention

of the testator.'" *In Re Trusts Under Will of McCann*, 212 Minn. 233, 240, 3 N.W.2d 226, 230 (1942), *quoting In re Trusteeship Under Will of Jones*, 202 Minn. 187, 189, 277 N.W. 899, 901 (1938). In *In re Comstock's Will*, 219 Minn. 325, 17 N.W.2d 656 (1945) the court stated:

[W]e are to be guided by the well-known principle that the entire instrument must be considered, "aided by the surrounding circumstances, due weight being given to all its language, with some meaning being given, if possible, to all parts, expressions and words used, discarding and disregarding no parts as meaningless, if any meaning can be given them consistently with the rest of the instrument."

*Id.* at 333, 17 N.W.2d at 661 (citations omitted). The parties agree that this rule applies to trusts as well as to wills.

Phyllis Brown claims that different parts of the trust show an intent to obtain the maximum possible marital deduction. She claims that these clauses are rendered meaningless by the trustee's interpretation. She claims that article eleven shows Burton Brown's intent that the marital trust qualify for the maximum marital deduction then allowed—approximately one-half of the gross estate.[2]

As stated above, we agree with respondent that this is not a funding provision, but a provision protecting the marital trust from later disqualification, regardless of the size of the particular trust estate. In 1974, certain assets did not qualify for the marital deduction, and the trust language prevents such assets from becoming part of the marital trust share. *See* I.R.C. § 2056(b) (1975); Treas.Reg. §§ 20.2056(a)–2, 20.2056(b)–1 (1975). Also, as noted previously, the provision makes only minimal adjustments and does not alter the funding language in article two.

Appellant claims that article ten of the trust also reveals Burton Brown's intent to fund the marital trust with the maximum amount consistent with the marital deduction. It directs that estate and inheritance taxes be paid out of the principal of the family trust. However, this article does no more than assume that whatever the marital deduction might be—0%, 50%, 100%—it will not be reduced by the payment of death taxes out of the marital trust or any other property qualifying for the marital deduction, such as property owned jointly by decedent and his spouse.

Finally, appellant points to this language in article two of the trust:

It is intended to obtain for the Grantor's estate the benefit of the so-called marital deduction provided for in the Internal Revenue Code in the form in which it is in effect at the date of his death. Accordingly, it is directed that this ARTICLE TWO and any other provision of this Trust be construed and interpreted and, if necessary, modified and limited, and that this trust be administered, so as to permit said trust to qualify for said marital deduction.

Appellant claims that this language directs interpretation of the will in order to maximize the marital deduction. However, the clause does not refer to a "maximum marital deduction." It only refers to a "marital deduction." The clause shows an intent to obtain the marital deduction and directs interpretation so that the trust *qualifies* for the deduction. It does not speak to the size of the deduction.

Appellant argues vigorously that we must accept his interpretation of the trust if the settlor's dominant intent is to be fulfilled. Appellant claims that the doc-

---

**2.** At the time the will was executed, the maximum marital deduction allowed for an estate the size of decedent's was one-half of the "adjusted gross estate" as defined by the Code. I.R.C. § 2056 (1946). In September of 1981, Section 1056 was amended to provide an unlimited marital deduction for estates of decedents dying after 1981. Pub.L.No. 97–34, 95 Stat. 172 (1981). Section 1056 also included a "Transi-tional Rule" to cover those wills executed between the then existing law and the new amendment. Under the transitional rule the smaller pre-1981 marital deduction would apply to wills executed before the date the amendment was effective unless certain conditions were met. Application of the transitional rule is not at issue on appeal.

ument clearly states the settlor's intent for his spouse to have as much as possible of his entire estate attributed directly to her because of anticipated tax savings. However, we note the following uncontroverted facts. During his lifetime (with no inference of diminished capacity), the settlor deliberately transferred the bulk of his estate, life insurance policies, to the family trust. He was aware that his spouse's estate would be limited to the few remaining assets in his probate estate and that his wife would receive the considerable joint assets. Between the time that he transferred the bulk of his estate to the family trust and the time he died, he was also aware that probate assets left to his spouse increased only minimally, if at all, yet he made no attempt to rewrite the provisions of either trust to ensure that the share going to his spouse outright would increase. He intentionally left to his spouse both income and principle from the family trust under certain circumstances.[3]

After making the final revision to both trusts, the settlor did nothing to reduce the size of the approximately $150,000 in joint tenancy assets which he knew would go directly to his spouse upon his death. Thus, we see in settlor's total estate planning a clear line of reasoning leaving to his spouse substantial joint tenancy assets, modest probate assets, and the right to request the corporate trustee such income and principal from the family trust as she feels necessary for her proper care and maintenance.

■ This court recognizes that tax savings are a common goal of estate plans, and we understand that significant estate taxes would be avoided under Phyllis Brown's interpretation of the trust agreement. However, we cannot ignore unambiguous language. We will not rewrite a trust merely because adding a word or changing a phrase would result in favorable tax consequences. There is neither a requirement nor a presumption that unambiguous terms intended by a settlor be disregarded because a different disposition of the assets would reduce the estate tax. Reading the trust agreement as a whole, we interpret the language the same way as did the trial court.

## III.

### Reformation of the trust

■ Appellant argues that the trust should be reformed due to mistake by the settlor. The alleged mistake is that "probate estate" in the provision funding the marital estate should read "taxable estate." Appellant did not raise this issue below. "A reviewing court must limit itself to consideration of only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." *Thayer v. American Financial Advisors, Inc.*, 322 N.W.2d 599, 604 (Minn.1982) (citation omitted).

## DECISION

The trial court did not err in instructing the trustees to fund the marital trust only with probate estate assets.

Affirmed.

CRIPPEN, J., dissents.

CRIPPEN, Judge, dissenting.

Being convinced that the decision here cannot be reconciled with a line of controlling Minnesota appellate decisions, I respectfully dissent.

The wishes of a testator or a settlor, unilaterally declared in a will or trust instrument, cannot be thwarted by mechani-

---

**3.** After setting aside $50,000 in trust for Andrea Brown, article three provides:

[T]he income of the remaining principal shall be accumulated and added to principal each calendar year until such time as there is no principal remaining in the MARITAL TRUST, after which event the Grantor's said wife, so long as she shall live, upon her request from time to time, shall be paid such part of the income as the corporate Trustee, in its sole discretion, shall deem necessary, advisable and appropriate to provide for her proper care, maintenance and support, taking into consideration all other means of income and support available to her.

cal attention to certain words used in the document. In the words of the Minnesota Supreme Court:

> A will is to be construed by a view of it as a whole and not by giving an arbitrary effect to the presence or absence of particular words or phrases.

*Johrden v. Pond,* 126 Minn. 247, 249, 148 N.W. 112, 113 (1914).

The controlling rule of law for the case has been settled since declared a century ago in an opinion written by Justice William Mitchell:

> The testator has thrown together a number of provisions, evidently without any clear comprehension of their legal import; but the cardinal canon for the construction of wills is that the general intent of the testator overrides all mere technical and grammatical rules of construction. This intent is to be ascertained from a full view of everything within "the four corners of the instrument;" and even the transportation of sentences and limitations is allowable, when necessary to express the clear intent and purpose of the testator.

*Whiting v. Whiting,* 42 Minn. 548, 549–50, 44 N.W. 1030, 1031 (1890).

The general intent of the settlor here is patent. He executed the will and trust instruments to provide equal marital and family trusts and to obtain for his family the estate tax benefits of a maximum marital deduction. To avoid prolonged discussion of language in the instruments, it suffices to examine the words of article 11 of the trust instrument, quoted by the majority. The settlor says in this article that the purpose of his declarations is "so that assets in the MARITAL TRUST will be the maximum marital deduction allowable and no more when taken in the aggregate with all other marital deductions allowed." The testator's will contained similar declarations.

The trial court felt compelled to deal with article 11 according to its practical design for adjustments or corrections of funding for trusts that became necessary because of tax auditing decisions. The majority also dismisses the importance of the paragraph because of its limited function. These conclusions fail to deal with the real import of the language in the paragraph. The expression of intent in article 11 is clear, no matter what practical function the paragraph may serve in the creation and administration of the trusts.

The trial court correctly observed that respect must normally be given to the ordinary meaning of all unambiguous words in a trust. *In re Fiske's Trust,* 242 Minn. 452, 460, 65 N.W.2d 906, 910 (1954). It is also true, however, that this determination must not be pursued where this leads to an unreasonable or absurd result. *Id.,* 65 N.W.2d at 911. Rules of construction must give way to the general intent of the settlor. *Whiting,* 42 Minn. at 549–50, 44 N.W. at 1031. The reference to probate assets in article two of the Brown trust is unexplainable, and it is unreasonable to permit an ordinary reading of this clause to upset the patent intent of Burton Brown in his estate plan. The trust language should be interpreted to permit the funding of the marital trust that was intended.