## Shipley's Estate (No. 1).

Argued January 9, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN and PATTERSON, JJ.

*Thomas Raeburn White*, with him *Thomas Raeburn White, Jr., Howard F. Troutman* and *White & Staples,* for appellant.

*Allen S. Olmsted, 2nd,* for appellees.

OPINION BY MR. JUSTICE MAXEY, March 25, 1940:

The Provident Trust Company of Philadelphia, executor of the Estate of Susan G. Shipley, deceased, appealed from the decree of the Orphans' Court of Chester County imposing certain surcharges upon appellant, on account of its failure to convert and pay over the assets of decedent's estate within one year after her death.

Susan G. Shipley died on March 17, 1930, and at the time of her death owned certain stocks, the principal item being twenty-six shares of stock of the Provident Trust Company, and a small house in Philadelphia. The personal estate was appraised at $38,692.08, without deduction for expenses or debts. The will provided for sixteen pecuniary bequests totaling $35,900, of which one bequest of $500 lapsed. The net estate was insufficient to pay all the legacies in full and the Provident Trust Company, the executor, decided against immediate liquidation. In 1937 liquidation was had upon the demand of certain legatees. The amount realized proved to be insufficient to pay all the legacies in full, and four out of the fifteen surviving legatees then filed exceptions to the account, alleging, inter alia, that the accountant was negligent in failing to make distribution within one year after the death of the decedent. The account was thereupon referred to J. Paul MacElree, Esq., auditor. He filed a report refusing any surcharge because, as stated in his report, "the pecuniary legatees, commencing in November, 1931, saw fit to acquiesce in the delay."

Exceptions were filed to the auditor's report and the court below held that the acquiescence of exceptants in November and December, 1931, in a postponement of liquidation, did not absolve the accountant from negligence in not liquidating the estate in March, 1931, one year after the death of the decedent. The court below found that there was no fraud or gross negligence, and that accountant exercised its honest discretion, but

failed in the exercise of common prudence and common caution in not selling the stocks which constituted the bulk of this estate at the end of one year from decedent's death. The court below imposed surcharges upon accountant for the difference between the sale price of the various stocks constituting the estate on March 17, 1931 (one year after decedent's death), and the prices actually received for such stocks when sold in 1938.

The law applicable to cases of this character has frequently been stated by this court. One of the most recent of our judicial expressions on this subject is found in *Seamans' Est.*, 333 Pa. 358, 363, 5 A. (2nd) 208, where Mr. Justice STERN, speaking for this court, said: "If a fiduciary receives nonlegal securities as part of the trust estate, he is vested by law with a measure of discretion and allowed to some extent to exercise his own judgment as to the wisdom of selling the securities under prevailing market conditions. However, in the absence of exceptional circumstances, he should convert them promptly." In a footnote to that opinion the following is quoted from Restatement of Trusts, sec. 230, comment b: "The question in each case is whether under all the circumstances the trustee acted with prudence in delaying the sale."

As each case is in its circumstances sui generis, the decision must depend on the circumstances, and for this reason, seldom, if ever, is the decision in one case an absolutely controlling precedent when another arises. In the instant case the circumstances are as follows: At the time of decedent's death her personal estate was valued at $38,692.08. The principal asset of her estate was twenty-six shares of stock of the Provident Trust Company of Philadelphia. The executor was justified in considering this stock a sound, nonspeculative security. Though there had been an unparalleled decline in the value of nearly all securities in the historic stock market crash of October 29th, 1929, yet six months after

this crash this stock was selling at $700 a share.*    In 1929 before the crash this stock had ranged in market value from $800 to $900 a share.   That even after the 1930 crash the stock had still such a high market value indicates a resistance to decline which would naturally generate in all interested parties confidence in the stock's basic worth.

Secondly, it is a matter of common knowledge that it was generally believed after the 1929 violent crash in values that stocks which had underlying worth would recover some part of the "market value" wiped out so suddenly in the panic.   Scarcely anyone had the clairvoyance to see that the second decline in stock values while "cushioned" over a longer period would be even greater than in the sudden decline in 1929.

Third, that the now excepting legatees shared the optimism of the officers of the Provident Trust Company in respect to this stock and acquiesced in their judgment in retaining it, is amply evidenced in this record.   The learned auditor aptly states in his painstaking opinion: "In a long series of letters set out at length in the record, the pecuniary legatees, commencing in November, 1931, saw fit to acquiesce in the delay [in liquidation]. . . . Here, to be sure, there was no request by the legatees, but there was unqualified acquiescence."   The auditor quoted with approval the opinion of Judge PENROSE in *Donnelly's Est.*, 8 Dist. Rep. 182, in which that eminent Judge of the Orphans' Court declared that "the duty of an executor to file an account at the expiration of a year does not imply or in-

---

* The market value of this stock during the period in question was as follows:

| | | |
|---|---|---|
| 4-17-30 ..$700.00 | 3-17-33 ..$306.00 | 3-17-36 ..$410.00 |
| 9-17-30 .. 648.00 | 9-17-33 .. 325.00 | 9-17-36 .. 539.00 |
| 3-17-31 .. 620.00 | 3-17-34 .. 358.00 | 3-17-37 .. 525.00 |
| 9-17-31 .. 449.00 | 9-17-34 .. 400.00 | 9-17-37 .. 484.00 |
| 3-17-32 .. 495.00 | 3-17-35 .. 410.00 | 3-17-38 .. 410.00 |
| 9-17-32 .. 390.00 | 9-17-35 .. 448.00 | 9-17-38 .. 358.00 |

volve the duty of converting assets of the estate into cash, if there is a reasonable belief that by holding them a sacrifice can be avoided; and in this respect more latitude is allowed as against legatees than where the rights of creditors are affected."

The record supports the auditor's factual finding of acquiescence. On November 28, 1931, the executor wrote a letter to Miss E. C. Winn (who subsequently assigned her legacy of $7,500 to Elizabeth Richards and Winifrede Richards Devan in equal proportions; these are now among the exceptants to the executor's account). The letter to Miss Winn reads as follows: "The situation in Miss Shipley's Estate briefly is, as follows: The balance of the assets consists of a piece of real estate which was taken over when it became necessary to foreclose a mortgage; a $1,000 bond and some stock of the Westmoreland Coal Company, Westmoreland, Inc., and the Provident Trust Company of Philadelphia. In view of the depressed condition of real estate in Philadelphia and vicinity it seems impossible at this time to dispose of the property and indeed we have been unable to rent it. The stock of Provident Trust Company, like all bank and trust company stocks, is selling at a very low figure and if we should at this time sell the real estate at forced sale and the securities at present market prices, it is probable we would realize only about half of the amount necessary to pay the residue of the legacies. It was for this reason it seemed to us, and counsel agrees with us, it would be better to postpone the payment of the legacies waiting for better conditions both in the real estate and stock markets." This letter was in answer to Miss Winn's inquiry of November 25th. She was apparently satisfied with the reply she received. On December 2, 1931, the Provident Trust Company wrote a letter to the now exceptant, Catharine Cox, who was left a legacy of $7,500, identical in the foregoing quotations with the letter written to Miss Winn. Mrs. Cox replied, under date of December 11,

576

1931, as follows: "Thanks for your informing letter in regard to the legacy left me by my cousin, Susan G. Shipley. I hope the New Year may see better conditions prevailing." Letters similar to those sent to Miss Winn and Mrs. Cox were sent to the other legatees under the will. One of the recipients of these substantially identical letters was Catharine Cox Miles (Mrs. Walter R. Miles), now an exceptant. She replied, under date of January 14, 1932, to the Trust Company's letter as follows: "I have your communication of December 14th, relative to the Susan G. Shipley No. 2 account. I am in agreement with your opinion that it is probably the best thing to postpone a settlement of the balance of the distribution of this estate until there is a better condition in real estate and stock markets. Thank you for your careful consideration of my interests in this matter." On April 19, 1933, the Provident Trust Company sent the following letter to Thomas J. Richards, who had been bequeathed $7,500 under the will: "In December, 1931, you will recall we took up with you the question of whether we should hold the balance of securities in our possession or make distribution among the legatees in Miss Shipley's Estate. Since that time there has been a further drop in security prices and we presume that the reasons which caused you to approve of our holding the securities at that time would continue at present. We should be glad to hear from you promptly in regard to this and shall understand that if no word is received that you will approve the policy of continuing to hold the securities with the hope that there will be an increase in values later on." On the same date similar letters were sent to legatees Miss Winn, Mrs. Cox and Mrs. Miles. Mrs. Miles replied: "Your proposal meets with my approval." Mrs. Cox replied: "I do approve holding the securities, in hopes of some steadying of values." Mr. Richards and Miss Winn did not reply. The Trust Officer in his letter of April 19th had said in effect that "no word" in reply

would be interpreted as an acquiescence in the policy recommended.

On May 8, 1936, a letter was received by the Trust Company from Walter P. Miles on behalf of Catharine C. Miles, in which he quotes a letter from his aunt, Mrs. Catharine E. Cox, expressing her preference for "Provident stock and cash to all cash" in making a settlement of the estate. Mr. Miles states in the letter that four legatees: Miss Richards, for her father, Thomas J. Richards, Mrs. Catharine E. Cox; Dr. Anna Cox Brinton; and Dr. Catharine M. Cox Miles, "are willing to accept shares of Provident stock at the market value in place of cash," in payment of the respective legacies. No complaint for failure to liquidate was made to the executor until late in 1937.

All of these legatees were sui juris. They knew that the Provident Trust Company stock, which was the principal recourse for the payment of their legacies, was being held for liquidation in a hoped-for more favorable market. From what they said in reply to the Trust Company's letters and from what they did not say, i. e., from their failure to protest against the retention of this stock, their complete acquiescence in the course of conduct they now complain of is the only inference that is legitimate and just. There is no rule of law which requires that an executor's foresight must measure up to the standard of a legatee's hindsight. This court has declared that "the rule with regard to the duty of a trustee into whose hands investments made by the testator himself may come, differs very greatly from that which governs him in making his own investments [from the funds of his estate]. In the latter case he becomes liable if he deviates from the line marked out by the law, should a loss arise. In the former case much is left to the discretion of the trustee, and if, in the honest and proper exercise of that discretion, he delays the realization, he may not be held liable for any loss arising from such delay": *Coggins' Appeal*, 3 Walker 426, 427.

The court below places considerable emphasis upon the fact that the letters relied upon in support of the acquiescence pleaded were all written during a considerable period subsequent to one year from the date of decedent's death. The court says that there "appears no evidence whatever of either acquiescence or approval by the legatees or exceptants of the retention of the stock by the executor during any period prior to a period long after March, 1931. . . . We find no acquiescence, approval or confirmation, in fact or law, of the retention by the executor of the stock in March, 1931." It is true that it was not until November 28, 1931, a little more than one year and eight months after Miss Shipley's death that the Trust Company sought the advice of the legatees in regard to the retention of this stock, but nowhere in the correspondence between the legatees and the executor do we find any complaint that the Provident Trust Company stock was not sold exactly one year after Miss Shipley's death. Had it been sold exactly one year after her death it would have brought $80 a share less than it was selling for on the day of her death. One month later, i. e., in April, 1931, it would have brought $50 still less or $570 a share. In July, 1931, it would have brought $45 less or $525 a share. Holders of stock which is basically sound and valuable are never inclined to sell that stock in a declining market and it cannot justly be adjudged that the executor in not throwing the stock on the market was not honestly and properly exercising the discretion vested in it. *Under all the circumstances here present* the executor was showing at the period in question the "common skill, common prudence and common caution" required of those who administer trust estates. That this stock which sold for $449 a share on September 17, 1931, sold for $539 a share five years later, indicates that the judgment of the officers of the Provident Trust Company, even when viewed retrospectively, was not so erroneous

as to convict them of anything approaching supine negligence.

Our conclusion as to the acquiescence of the legatees in the retention by the executor of the stock of the Provident Trust Company applies also to the retention of the 26 shares of the stock of Westmoreland, Inc., and the 26 shares of stock of Westmoreland Coal Company.

The surcharge of the Trust Company sought by the exceptants is made up as follows:

(A) Of credits totaling $6,428.05 on the sale and revaluation of the stock of the Provident Trust Company.

(B) Of credits totaling $235.06 on the sale of certain stock of, respectively, the Westmoreland Coal Company and Westmoreland, Inc.

(C) Of credits of $152.38 on the sale of Algoma Consolidated Corporation, Ltd.

(D) Of credits taken in the account totaling $2,261.17 for executor's commissions.

The auditor dismissed these exceptions.

After argument upon the exceptions to the auditor's report, the court disallowed credit (A) in the amount of $5,648.05 and credit (B) in the amount of $186.31, but allowed credit (C) on account of the insufficiency of the evidence that the 22 shares of the stock in question "had a realizable market value at any time, when . . . the executor should have sold it," and allowed credit (D) because of the absence of "the penalizing elements of fraud, wilful default or of gross negligence or mismanagement."

The court added: (1) "All of the exceptions taken to the account and to the report of the auditor must be sustained, in so far as they relate to the retention of the stocks of the Provident Trust Company, the Westmoreland Coal Co., and the Westmoreland, Inc." (2) "No part of the costs should fall upon the estate or the interest of the exceptants therein but the whole thereof should be imposed upon the executor."

The decree of the court below in respect to credits (A) and (B), supra, and in sustaining the exceptions just mentioned as (1), and in imposing the costs upon the executor is reversed. The record is remitted for further proceedings in accordance with this opinion. The cost of the audit and the appeal are to be imposed on the four exceptants; no costs are to be imposed on the surviving legatees who filed no exceptions.