642 A.2d 467

In re FRANCIS EDWARD McGILLICK FOUNDATION.

Appeal of Patrick CORBETT, Francis Corbett, Louis Anania and Robert Barozzini, Trustees of Francis Edward McGillick Foundation at No. 9.

Cross–Appeal of The Roman Catholic Diocese of Pittsburgh Pennsylvania at No. 10.

Supreme Court of Pennsylvania.

Argued March 9, 1993.

Decided May 26, 1994.

---

Russ J. Ober, Jr., Meyer, Unkovic & Scott, Vince J. Grogan, Grogan, Graffam, McGinley & Lucchino, P.C., Pittsburgh, for appellants at No. 9 and appellees at No. 10.

Ralph H. German, A. William R. Bishop, Jr., William R. German, Sherrard, German & Kelly, P.C., Pittsburgh, for appellant at No. 10 and appellee at No. 9.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This case involves an incidental beneficiary of a trust seeking the equitable relief of removal and surcharge of trustees. The orphans' court granted the drastic remedy of removal of the trustees, which was affirmed by the Superior Court. 406 Pa.Super. 249, 594 A.2d 322. We granted an appeal by allowance.

The following history forms the background of this litigation. In 1937, Francis E. McGillick created an agreement and declaration of trust which established the Francis Edward McGillick Foundation. The settlor's will, dated May 26, 1936, was incorporated into the provisions of the trust agreement. The agreement instructed the trustees to create two funds of $25,000 each with the proceeds to be paid to the Roman Catholic Diocese of Pittsburgh for the education of young men for the priesthood and young women for the sisterhood. The agreement further instructed the trustees to invest all other assets of the foundation and to pay one-half of the net income to the Catholic Bishop of Pittsburgh and his advisory board for the purpose of creating as many scholarships as the income would maintain. The recipients of the scholarships were to be worthy men and women of the Roman Catholic faith, between the ages of sixteen and forty years of age, to be selected by the Bishop and his advisory board. The students awarded scholarships would be permitted to attend any school or university, and the scholarships were limited to $200 per student per year for a maximum of four years.

The trust agreement further provided that payment of half of the foundation's net income to the Bishop for scholarships should cease when the trustees determined that the principal and accumulations were sufficient to establish a fifty-student vocational school. If the Bishop and his advisory board were not interested in the plan for the school, the trustees were

authorized to carry out the plan without the assistance or participation of the Bishop.

The principal asset of the foundation, at the time of McGillick's death, was the stock of the F.E. McGillick Company. The company, in turn, was the sole shareholder of six subsidiary companies. When McGillick died in 1961, the assets of the subsidiaries consisted almost entirely of fifty-eight parcels of residential and commercial real estate throughout Southwestern Pennsylvania, varying widely in value.

The trust agreement named as trustees and executors McGillick's three sons and other close relatives, including Patrick Corbett, McGillick's son-in-law. Upon McGillick's death in 1961, Corbett was the only named trustee living, and he became one of the trustees. By the time this litigation commenced in 1987, only Corbett remained of the trustees appointed in 1961; the other trustees serving in 1987 were Robert D. Barozzini, Esquire, appointed in 1969, Francis Corbett, Patrick Corbett's son, appointed in 1977, and Louis F. Anania, an accountant appointed in 1982.

In the early 1980's, at a time when the diocese was experiencing financial difficulties and had an urgent need for funds to operate the diocesan secondary school system, the diocese proposed a restructuring of the foundation and its assets. The diocese informed the trustees that it had no present or future need of a vocational school and deemed it unlikely that the net worth of the foundation will ever be sufficient to establish such a school. The foundation, upon advice of counsel, declined to reorganize, whereupon the diocese petitioned the Orphans' Court Division of the Court of Common Pleas of Allegheny County to remove and surcharge the trustees of the McGillick Foundation.

Due to a fire which destroyed many foundation records in 1980, the orphans' court limited its consideration primarily to the period 1980–1986. Following trial, the orphans' court entered a decree which removed all four trustees, ordered the filing of an accounting within ninety days, and denied the request for a surcharge. Both parties appealed from the

decree. The diocese claimed that the evidence justified imposition of a surcharge against the trustees, and that the payment by the foundation of the trustees' legal fees was improper; the trustees objected to the standing of the diocese, argued that the doctrine of unclean hands should bar the suit, and claimed that they should be compensated for their services during the pendency of the suit. The Superior Court affirmed the trustees' removal, the order to file an accounting, and the denial of a surcharge. The Superior Court, however, modified the decree to reverse the foundation's payment of the trustees' legal fees in defense of this action, and remanded the case to the orphans' court to allow the trustees to establish the reasonable value of their services to the foundation during the pendency of these proceedings. Both parties have appealed from the order of the Superior Court.

These cross appeals thus present issues relating to the performance, removal, and surcharge of trustees under a charitable trust, issues of standing, capacity to sue, and the unclean hands doctrine of equity,[1] as well as issues involving the trustees' right to have the trust underwrite costs of litigation challenging their fiduciary performance.

■ The trustees have, throughout this litigation, questioned the standing of the diocese to bring this action. The trial court concluded that the diocese "may incidentally benefit from the performance of that portion of the Trust which provides for the establishment of the two religious education funds," and the Superior Court held that although the diocese is not a named beneficiary of the trust, the intimate involvement of the diocese with the disbursements of the scholarships is a special, nonpecuniary interest which creates standing to enforce the charitable trust. 406 Pa.Super. at 261, 594 A.2d at 328.

1. The trustees alleged that suit by the diocese should be barred due to the mismanagement of scholarship funds by the diocese. We need not address the issue of whether the diocese had "unclean hands" as that doctrine is known to equity, as we hold that the trustees are entitled to relief on other grounds.

 Standing requires that an aggrieved party have an interest which is substantial, direct, and immediate. That is, the "interest must have substance—there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." That an interest be direct requires that an aggrieved party "must show causation of the harm to his interest by the matter of which he complains." To find an immediate interest, we examine "the nature of the causal connection between the action complained of and the injury to the person challenging it." *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 195–97, 346 A.2d 269, 281–83 (1975); *1000 Grandview Ass'n v. Mt. Washington Assoc.*, 290 Pa.Super. 365, 367, 434 A.2d 796, 797 (1981). In *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 205, 412 A.2d 466, 469 (1979), we cited with approval the Restatement (Second) of Trusts, § 200 (1959): "No one except a beneficiary or one suing on his behalf can maintain a suit against the trustee to enforce the trust or to enjoin or obtain redress for a breach of trust." We added "grave doubt as to the standing of a stranger to object to the waste of trust assets." *Id.;* citing *Curtis Estate*, 437 Pa. 123, 126 n. 3, 261 A.2d 589, 591 n. 3 (1970).

The Superior Court was correct, under this standard, in deciding that the diocese had standing to enforce the trust. The integral involvement of the diocese in the awarding of scholarships and its prerogative to participate in the establishment of a vocational school under the trust create an interest on the part of the diocese which is immediate, direct, and substantial—certainly far greater than the abstract interest of all citizens in having others comply with the law. The settlor, McGillick, could have had his foundation award scholarships directly to students; instead, he directed that the church should select the students who would receive them. The same is true of the vocational school. The settlor clearly had some purpose in authorizing the church to participate in creating such a school rather than granting the power solely to the trustees. We conclude, therefore, that the diocese has standing to bring this action.

■ In support of its petition to remove the trustees, the diocese produced evidence of numerous practices and omissions by these trustees which would not be found in a textbook on responsibilities of trustees, except perhaps in a chapter on problem areas to be avoided by the prudent fiduciary. Nonetheless, trustees are not judged by an ideal standard, but by the standard set forth in 20 Pa.C.S. § 3182 (grounds for removal of personal representative), made applicable to trustees by 20 Pa.C.S. § 7121 (removal of trustee). The statute provides:

### § 3182. Grounds for removal

The court shall have exclusive power to remove a personal representative when he:

(1) is wasting or mismanaging the estate, is or is likely to become insolvent, or has failed to perform any duty imposed by law; or

(2) has been adjudged a lunatic, a habitual drunkard, or a weakminded person; or

(3) has become incompetent to discharge the duties of his office because of sickness or physical or mental incapacity and his incompetency is likely to continue to the injury of the estate; or

(4) has removed from the Commonwealth or has ceased to have a known place of residence therein, without furnishing such security or additional security as the court shall direct; or

(5) when, for any other reason, the interests of the estate are likely to be jeopardized by his continuation in office.

There is no suggestion that subsections (2), (3), or (4) apply, so our consideration is limited to subsections (1) or (5)—wasting or mismanaging the estate, failing to perform a duty imposed by law, or otherwise jeopardizing the interests of the estate by continuing in office. It should be remembered that " 'removal of a trustee is a drastic action, which should only be taken when the estate is actually endangered and intervention is necessary to save trust property,' and particularly is this true

in the case of a trustee selected by a testator, as opposed to a court selected trustee." *Fraiman Estate,* 408 Pa. 442, 449, 184 A.2d 494, 497 (1962), quoting *Mathues' Estate,* 322 Pa. 358, 359, 185 A. 768, (1936) (citations omitted); *Estate of Hamill,* 487 Pa. 592, 599, 410 A.2d 770, 773 (1980); *Estate of Croessant,* 482 Pa. 188, 193, 393 A.2d 443, 446 (1978). The law of Pennsylvania does not require that a fiduciary's foresight measure up to another's hindsight. *Shipley's Estate (No. 1),* 337 Pa. 571, 577, 12 A.2d 343, 346 (1940).

The evidence of wasting, mismanaging, or otherwise jeopardizing the estate included the following conduct by the trustees. From 1980 to 1986, the trustees controlled the foundation, each receiving an annual salary of $9,600. In addition, Barozzini received compensation as the attorney and real estate manager for the foundation as well as for the McGillick Company and its subsidiaries. Anania received additional compensation as the accountant for the foundation, McGillick Company, and its subsidiaries. Both Corbetts failed to play an active role as trustees and were not involved in any decision making, though they attended meetings and made occasional phone calls. Frank Corbett rented property from a foundation subsidiary at a rate determined by himself. Anania, a trustee since 1982, and accountant for the foundation, never prepared an annual accounting for the foundation, though such accounting was required by the trust documents. The trial court found that Anania and the Corbetts "abdicated" their responsibilities as trustees in favor of Barozzini, "who has had complete control in running the foundation."

Barozzini, on his part, charged the foundation $115,000 in legal fees between 1980 and 1986. In addition, he received real estate management fees totalling $222,000 figured on the basis of a 5% to 6% commission on rents collected plus a 10% supervision charge on service work he arranged and supervised at the various rental locations and on other expenditures related to management of the real estate. The trial court found that Barozzini "provided himself with every fee, commission, charge, and expense possible, while at the same time depleting trust assets."

On the other side of the ledger, the evidence included the following: in 1969, the total value of the foundation's assets was $873,000. From 1970 to 1986, the trustees made more than $800,000 in distributions from the scholarship fund to the diocese. In addition, the value of the foundation increased to over $3.5 million by 1986. The trial court specifically found: "No evidence was presented to prove that the rate of return on the assets of the foundation was inadequate or that the trustees should be surcharged because of any loss of income suffered by the trust as a result of improper or imprudent investments made by the trustees." The orphans' court also stated that

> the McGillick Foundation is unique, due in part to the fact that it is comprised chiefly of real estate, which requires considerable personal time and attention to administer. Because of limited resources, some overlapping of administrative duties among the individuals involved may be expected.
>
> ... [B]ecause of the limited resources of nonprofit organizations, it is not unusual to find an overlapping of duties among the individuals involved in the administration of the entity.

Moreover, the trust declaration contained clauses granting explicit permission for the trustees to delegate responsibilities to one of their number, and contained an exculpatory clause as well. The trust agreement states:

> TWELFTH: The Trustees may appoint from amongst their number an Executive person, to whom they may delegate such or all of the power conferred upon the Trustees, as they may deem expedient, herein....
>
> THIRTEENTH: The Trustees shall not be liable for any error of judgment for any loss arising out of any act or omission in the execution of this trust so long as they act in good faith, nor shall they be personally liable for the acts or omissions of each other, or for the acts or omissions of any officer, agent or employee elected or appointed by or acting for them, and they shall not be obliged to give any bond to secure the due performance of this trust by them.

The trial court removed Anania and the Corbetts because they delegated their responsibilities to Barozzini who "provided himself with every fee, commission, charge, and expense possible, while at the same time depleting trust assets." Although Barozzini's fees, commissions, charges, and expenses necessarily had the effect of depleting trust assets, that alone does not determine whether the charges were proper or improper.

The Superior Court noted "that the trial court never made an express finding that either of the Corbetts or Anania charged excessive fees to the Foundation. The Corbetts and Anania were removed for their failure to actively participate in the management of the Foundation." 406 Pa.Super. at 265, 594 A.2d at 330. The Superior Court also commented that the trial court "noticeably" failed to make "any finding that any fee or commission charged by Barozzini was excessive or that any loss to the Foundation was attributable to his conduct." *Id.* at 266, 594 A.2d at 331.

The record, therefore, simply does not support removal of the trustees under the statutory standard of 20 Pa.C.S. § 3182. As to waste or mismanagement of the estate, there was no waste in the sense the term is used in the law of trusts. Beginning with assets of $873,000 in 1969, the foundation distributed at least $753,000 in scholarship funds from 1970 to 1986, and increased in value to $3,500,000. There was no finding of excessive fees or commissions charged by any of the four trustees. There is nothing in the record to support a conclusion that the continued tenure of any of the four trustees will jeopardize the interests of the foundation; on the contrary, there is equal reason to believe that the foundation will continue to flourish under their stewardship. We do not extol, any more than the orphans' court or the Superior Court, the performance of these trustees. Nevertheless, application of the statutory standard makes it error to remove the trustees, and there is no supportable ground for imposing a surcharge, as both lower courts concluded.

■ A final issue must be addressed: the matter of foundation payment of the trustees' legal fees in defense of this litigation. In *Estate of Browarsky,* 437 Pa. 282, 285, 263 A.2d 365, 366 (1970), we stated:

> The executors were placed in the position to be sued because of duties they had performed for the estate. That being the case, it would be unjust to require them personally to bear the reasonable costs of the defense of suits brought against them solely by reason of their positions as executors. "It is well established that whenever there is an unsuccessful attempt by a beneficiary to surcharge a fiduciary the latter is entitled to an allowance out of the estate to pay for counsel fees and necessary expenditures in defending himself against the attack."

(Quoting *Wormley Estate,* 359 Pa. 295, 300–01, 59 A.2d 98, 100 (1948).) It is clear that the trustees are entitled to indemnification, by the foundation, of their expenses in defending this litigation.

The order of the Superior Court is affirmed in part and reversed in part.

LARSEN, J., did not participate in the decision of this case.

PAPADAKOS, J., files a concurring and dissenting opinion in which NIX, C.J., joins.

MONTEMURO, Senior Justice, was an appointed Justice of the court at the time of argument.*

PAPADAKOS, Justice, concurring and dissenting.

I join in all portions of the majority opinion except with respect to the conclusion that Anania and both Corbetts are not to be removed as trustees. The majority has correctly cited the applicable section of the law governing grounds for removal (20 Pa.C.S. § 3182) which provides that the court shall have exclusive power to remove a personal representa-

---

* Mr. Justice Montemuro is sitting by designation as senior justice pursuant to Judicial Assignment Docket No. 94 R1800 due to the unavailability of Mr. Justice LARSEN; see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

tive when he " ... (1) ... has failed to perform any duty imposed by law." (Maj. op., p. 200.)

The majority opinion then recognizes that both Corbetts failed to play an active role as trustees and were not involved in any decision making. (Maj. op., p. 200.) They attended meetings as mutes and collected $9,600.00 per annum for their muteness. It is not necessary to delineate what duties imposed by law they did not perform since they performed no duties. Therefore, they failed to perform the duties imposed by law. Anania never prepared an annual accounting for the foundation, though such accounting was required by the trust documents. (Maj. op., p. 200.) Thus, he, too, failed to perform a duty imposed by law.

I believe the lower court was correct in removing Anania and the Corbetts as trustees and they should be surcharged for the fees they received for doing nothing. I, therefore, dissent.

NIX, C.J., joins this concurring and dissenting opinion.