J-A30006-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ADRIAN CHEN TRUST NO. 1 & ADRIAN CHEN TRUST NO. 2 | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: ADRIAN CHEN | : : : : : : : | |
| | : | No. 1950 WDA 2016 |

Appeal from the Order Entered December 2, 2016
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): Case No. 02911840

BEFORE: BOWES, J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.: FILED APRIL 12, 2018

Adrian Chen appeals from the order of the orphans' court refusing to surcharge the trustees of the Adrian Chen Trust No. 1 ("Chen Trust 1") and the Adrian Chen Trust No. 2 ("Chen Trust 2"), and approving fees charged in connection with the administration of the trusts. We affirm.

On July 8, 2013, Mr. Chen, a resident and citizen of Hong Kong,[1] instituted this action by filing a petition for citation to show cause 1) why a surcharge should not be imposed on Appellees, Dominic C. Abbott, Joseph A. DeMartino, and Rudolf Bischof (collectively "trustees"), who are the trustees

_____

[1] Hong Kong is a semi-autonomous region of the People's Republic of China.

of the Chen Trust 1 and the Chen Trust 2; and 2) why the terms of the Chen Trust 2 should not be amended.[2]

The following background facts aid in an understanding of the issues presented on appeal. At all relevant times herein, William Robinson, Esquire, was a prominent estates and trusts attorney in the Pittsburgh area who practiced initially at Reed Smith LLC, and later at Lovett Bookman Harmon Marks, LLP. Both firms were highly-regarded law firms with access to tax professionals. The latter firm was formed in 2003 by estate and trust specialists from Reed Smith LLC and was devoted to practicing in the area of estates and trusts. Mr. Robinson received an undergraduate degree from Princeton University, earned his law degree in 1966 from the University of Pennsylvania Law School, started to practice at Reed Smith in 1968, and became an equity partner in that firm.

In 1987, Mr. Robinson drafted a trust for Mr. Chen's mother, Stella Lam Chen, who was a resident of Hong Kong.[3] On December 15, 1987, Mrs.

_____

[2] The July 8, 2013 petition also included a request that the trustees be removed. On August 23, 2016, the trial court entered a consent order outlining the terms of an agreement reached among Mr. Chen and the three trustees whereby the latter three agreed to resign. However, the resignations were not effective until a successor corporate trustee agreed to accept appointment as trustee of the trusts in question, which did not occur. Thus, the trustees, contrary to Mr. Chen's representation on appeal, continue to serve since the triggering event for their resignation has not yet occurred. See Appellant's brief at 5.

[3] Since Hong Kong was a British colony in 1987, Mrs. Chen's citizenship status is unclear.

Chen executed that document, which named as trustees Mr. Abbott, Mr. Bischof, Harold Goldman, and Mrs. Chen's husband Godfrey, who was Mr. Chen's father. Mrs. Chen died on June 18, 1988, and pursuant to the terms of her December 18, 1987 trust, its assets were divided into three parts and placed in three successor trusts.

One of the three trusts created upon Mrs. Chen's death benefitted Mr. Chen and his issue and became the Chen Trust 1. The other two trusts benefited Godfrey and Mrs. Chen's daughter, Cynthia, respectively. The Chen Trust 1 was a domestic non-grantor trust, a complex trust for United States federal income tax purposes. This trust minimized tax by not subjecting to federal income tax any distributions of capital gains in a taxable year to a foreign person or foreign trust, and by imposing federal income tax only on dividend income from a United States source. Mr. Chen's father Godfrey died in 1989, when Mr. Chen was sixteen years old, and Mr. DeMartino was appointed to replace him as trustee of the Chen Trust 1.

In 1994, Mr. Chen received a substantial inheritance from his father's estate. Mr. DeMartino and Mr. Robinson suggested that he place those funds in a trust, which Mr. Robinson drafted and Mr. Chen signed. When Cynthia told her brother that it was ill advised to place that money in a trust, Mr. Chen conveyed to Mr. Robinson that he no longer wanted the trust. The attorney voided the 1994 instrument.

From June 18, 1988, until 1995, gains from the Chen Trust 1 were distributed to a foundation that had been created by Godfrey. In 1995, the

trustees became dissatisfied with the performance of their investment managers, liquidated the investments of the Chen Trust 1, and chose a new investment manager. That liquidation resulted in realized capital gains of approximately $2 million. Mr. Robinson advised Mr. Chen to create a foreign grantor trust to receive the $2 million dollar gain as well as all future gains generated by the Chen Trust 1. Mr. DeMartino concurred with the advice offered by Mr. Robinson.

On February 27, 1996, just months before he graduated from Carnegie Mellon University with a degree in industrial management and economics, Mr. Chen executed the Chen Trust 2. This was the foreign grantor trust that was created at Mr. Robinson's recommendation. At that time, Mr. Chen was married but had no children. The Chen Trust 2 was an irrevocable trust that benefited Mr. Chen and his issue, and qualified as a foreign grantor trust under the federal tax law in existence on February 27, 1996. It was funded with distributions from the Chen Trust 1.

On February 27, 1996, Mr. Chen designated Mr. Abbott, Mr. Bischof, Mr. Goldman, and Mr. DeMartino, as the trustees of the Chen Trust 2. Under the terms of the February 27, 1996 trust instrument, the trustees were permitted to distribute the whole or any part of the income and principal of the Chen Trust 2 to Mr. Chen, Mr. Chen's wife, or Mr. Chen's issue. The intent of the Chen Trust 2 was to reduce Mr. Chen's United States income tax liability. Specifically, due to its status as a foreign grantor trust, the Chen Trust 2 minimized the tax liability of both the Chen Trust 1 and the

Chen Trust 2 under the Internal Revenue Code because Mr. Chen diverted all his disbursements from the Chen Trust 1 to the Chen Trust 2. In turn, all of the Chen Trust 2's income was taxed as if received by Mr. Chen, who is not a United States citizen, and was thereby subjected to a reduced amount of federal income tax liability. While Mr. Chen was not permitted to amend or revoke the aforementioned trust, the trust instrument provided that the trustees could, with court approval, reform the trust to eliminate or minimize any burdensome tax consequences to the trust so long as the change was consistent with the purpose of the trust.

On August 20, 1996, the United States income tax law was amended, the effect of which was to disqualify the Chen Trust 2 as a foreign grantor trust solely because its income and principal could be distributed to the issue of Mr. Chen. There is no proof that the trustees ever knew about this change in the tax law. When Mr. Goldman died in 1997, he was not replaced. Thus, Appellees were the trustees of both of the Chen trusts when the present lawsuit was filed. After the February 27, 1996 trust was created, Mr. Chen and his wife had children. Mr. Chen, his wife, and his children have never been residents or citizens of the United States, and only Mr. Chen received distributions from the Chen Trust 2.

From 1996 onward, the trustees continued to use Mr. Robinson for legal advice, and employed an independent accounting firm, Louis Plung & Company ("Plung") to prepare income taxes for the two trusts. In 2011, Mr. Chen retained the services of Dennis Unkovic, Esquire, who informed Mr.

Robinson in October of that year that the Chen Trust 2 did not qualify as a foreign grantor trust due to the fact that Mr. Chen's children were beneficiaries, and the August 20, 1996 alteration in the tax law prohibited children from being beneficiaries of a foreign grantor trust.

In turn, Mr. Robinson told the trustees, for the first time, that there was an issue as to whether the Chen Trust 2 qualified as a foreign grantor trust. Mr. Robinson advised them that the problem could be remedied, and the trustees relied upon this advice and continued to treat the Chen Trust 2 as a foreign grantor trust in income tax returns filed after October 2011. Plung filed the income tax returns for the Chen Trust 2 from 2011 to 2013 as if it was a foreign grantor trust. For the 2014 filing, the trustees retained Don Kozusko, Esquire, to prepare the income tax returns for the Chen Trust 2, and he treated that trust as a foreign grantor trust. Mr. Kozusko, a Harvard Law School graduate, had offices in Washington, D.C., New York, Chicago, and Connecticut, and had practiced domestic and international estate and tax planning for over thirty-five years.

In his July 8, 2013 petition instituting this lawsuit, Mr. Chen claimed that the trustees breached their fiduciary duty in two respects: 1) despite being informed in October 2011 of the problem with the status of the Chen Trust 2 as a foreign grantor trust, trustees did not seek advice from a lawyer other than Mr. Robinson; and 2) they continued to allow income tax returns to be filed for that trust as if it were a foreign grantor trust. Mr. Chen sought a surcharge for the potential adverse tax consequences flowing from

the possibility that the Chen Trust 2 would lose its status as a foreign grantor trust. Mr. Chen also asked that the terms of the Chen Trust 2 be modified. During the course of the proceedings, Mr. Chen raised a third surcharge issue: that in 1995, the trustees erroneously overpaid withholding taxes on dividends.

On December 9, 2013, the trustees joined in Mr. Chen's prayer for relief as to the modification of the trust. Specifically, they filed a motion for immediate implementation of Mr. Chen's request that the terms of the Chen Trust 2 be modified to eliminate Mr. Chen's children as beneficiaries to ensure that it would be treated as a foreign grantor trust. On May 6, 2014, a guardian ad litem was appointed for the children.

On July 2, 2014, Mr. Chen opposed the December 9, 2013 motion, even though it was consistent with his July 8, 2013 petition. At that time, Mr. Chen sought to terminate the irrevocable Chen Trust 2. Then, on February 19, 2015, Mr. Chen asked that both trusts be terminated and their assets be transferred to two newly-drafted trusts with Appellees as the named trustees. The trustees opposed that grant of relief, as it was inconsistent with Mrs. Chen's intent when she created the Chen Trust 1.

On March 3, 2016, the trustees filed a first and partial account for both trusts covering the period from June 19, 1988, through January 31, 2016. Mr. Chen and the guardian ad litem of his children filed objections. In June and July 2016, the orphans' court conducted seven days of hearings on the various issues before it. By that time, Mr. Chen had raised an additional

basis for surcharge: that the trustees overpaid withholding taxes in 1995, when the trust assets were transferred to PNC Bank in the United States. On August 9, 2016, the orphans' court entered an order that reformed the Chen Trust 2 to eliminate Mr. Chen's issue as beneficiaries, and ordered the trustees to obtain a private letter ruling from the Internal Revenue Service ("IRS") as to whether its court-ordered amendment would be given retroactive effect.

The trustees have supplemented the record with a November 13, 2017 private letter ruling issued by the IRS after this appeal was filed. That federal agency ruled that the August 9, 2016 modification to the Chen Trust 2 would be considered retroactive and effective as of February 27, 1996, the date the trust was created.

On October 31, 2016, the trustees filed a second and partial account encompassing the period January 31, 2016, through September 30, 2016. Mr. Chen also filed objections to that account, but waived a hearing on those objections. On November 30, 2016, the orphans' court issued a ruling denying the request for surcharge and all other objections to both the first and partial account and the second and partial accounts. This appeal followed. Mr. Chen raises the following issues on appeal:

> 1. Whether the lower court erred and abused its discretion in denying Appellant's objections to the more than $7 million in legal fees, trustees fees and other professional fees identified in Trustees' Accounts, when it applied the incorrect burden of proof, failed to distinguish between professional fees relating to the administration of the Trusts and fees relating to litigation

failed to conduct any analysis regarding the reasonableness of any [of] the professional and trustee fees incurred, failed to make any conclusion of law regarding the reasonableness of the Trustees' fees, and in failing to even address in its Opinion Appellant's legal fees[.]

2. Whether the lower court erred and abused its discretion by denying Appellant's request for surcharge of the Trustees even before the issuance of a critical Private Letter Ruling ("PLR") by the Internal Revenue Service ("IRS"), and concluding that the Trustees were not negligent and reasonably relied on counsel and other professionals.

Appellant's brief at 4.

Prior to addressing the merits of these contentions, we first outline the applicable standard of review:

Our standard of review of an orphans' court's decision is deferential. When reviewing an orphans' court decree, this Court must determine whether the record is free from legal error and whether the orphans' court's findings are supported by the record. Because the orphans' court sits as the finder of fact, it determines the credibility of the witnesses and, on review, this Court will not reverse its credibility determinations absent an abuse of discretion. However, this Court is not bound to give the same deference to the orphans' court conclusions of law.

Estate of Sacchetti v. Sacchetti, 128 A.3d 273, 281–82 (Pa.Super. 2015) (citations omitted).

Mr. Chen's first issue on appeal is that the orphans' court committed an abuse of discretion in approving the legal fees, trustees fees, and other professional fees outlined in the two accounts. Specifically, he contends that the court 1) incorrectly allocated to him the burden of proving the reasonableness of those fees; 2) made no determination as to their

- 9 -

reasonableness; and 3) did not distinguish between fees properly incurred to administer the trust from those relating to deficient legal advice.

Preliminarily, we note that these allegations presented on appeal bear no resemblance to the objection that Mr. Chen actually leveled before the orphans' court. Indeed, nothing in Mr. Chen's objections can be remotely construed to include the present allegations that he raises on appeal. Mr. Chen's objections to the account for Adrian Chen Trust 1 were as follows:

> 26. Objection is made to the payment of legal fees to Reed Smith, William Robinson, Buchanan Ingersoll [which is the law firm that successfully defended Mr. Chen's request for surcharge against the trustees], Kozusko Harris Duncan[, which is the law firm that prepared the two accounts specifically ordered by the orphans' court] and Lovett Bookman. Objection is made to the payment of fees to Louis Plung for accounting services.
>
> 27. Objection is taken to the payment of Trustees fees to the Trustees of the trust.

Adrian Chen's Objections to the First Partial Account for Adrian Chen Trust No. 1, 4/18/16, at 26, 27 (emphases added). His objections to the account filed for the second trust are almost identical:

> 20. Objection is made to the payment of legal fees to Reed Smith, William Robinson, Buchanan Ingersoll, and Kozusko Harris Duncan.
>
> 21. Objection is made to the payment of fees to Louis Plung and Gleason & Associates for accounting services.
>
> 22. Objection is taken to the payment of Trustees fees to the Trustees of the trust.

Adrian Chen's Objections to the First Partial Account for Adrian Chen Trust No. 2, 3/3/16, at 20-22 (emphases added).

By these objections, Mr. Chen clearly sought to surcharge the trustees for all the fees that they had paid to themselves, all the lawyers, and any accountant from the inception of the two trusts. Thus, Mr. Chen's objections raise the position that all of the attorneys, accountants, and trustees in question were not entitled to any compensation at all. This proposition apparently was premised upon Mr. Chen's averments that the trustees breached their fiduciary duties by relying upon Mr. Robinson's advice after 2011.

We find that Mr. Chen's claims constitute overreaching. Simply put, the trustees would be entitled to fees prior to 2011, since there were no allegations that they breached their fiduciary duties before that time. Furthermore, Mr. Chen had no legal grounds upon which to challenge the fees charged to prepare the court-ordered accounts filed in this matter. Finally, Mr. Chen never raised a contention that the accountants knew or should have known that the Chen Trust 2 was not a qualified foreign grantor trust, and knowingly filed incorrect tax returns for the trusts before 2011.

The trustees countered these objections by noting that there was no legal basis for Mr. Chen's claim that they, the lawyers, and the accountants were not entitled to any compensation for the services that they rendered from 1987 to 2016:

> 26. The averments contained in Paragraph 26 are denied. It is denied that Adrian Chen's Objections to payment of legal fees to Reed Smith, William Robinson, Buchanan Ingersoll, Kozusko Harris Duncan, or Lovett Bookman have any legal merit. It is also denied that Adrian Chen's objection to payment to Louis

Plung & Co. for accounting services has any legal merit. By way of further response, per the terms of the [Chen Trust 1] and the [Chen Trust 2], the Trustees are entitled to use Trust assets to pay administrative costs, accountant fees, and legal fees. See [Chen Trust 1] § 5.2(L); [Chen Trust 2 § 4.2(L). . . . The Trustees have not committed a breach of trust, engaged in any misconduct, or otherwise improperly incurred the fees and costs. However, a trustee is not ordinarily entitled to attorney's fees and expenses if it is determined that the trustee breached the trust. . ."); see also In re Wormley's Estate, 59 A.2d 98 (Pa. 1948). At all times, the Trustees' actions have been competent, professional; proper, legal, exercised in good faith, and predicated upon the advice of trust counsel and professional tax and investment managers and advisers, all of which were relied upon by the Trustees and consistent with the Trusts' terms and has served to benefit the present and any future beneficiaries of the Trusts.

27. The averments contained in Paragraph 27 are denied. It is denied that Adrian Chen's Objection to payment of the Trustees' fees has any legal merit. By way of further response, the Trustees only started receiving payment of fees in 2002. Per the terms of the [Chen Trust 1] and the [Chen Trust 2], the Trustees are entitled to receive reasonable compensation for services. See [Chen Trust 1] § 6.9(A); [Chen Trust 2] § 5.9(A). The express terms of both the [Chen Trust 1] and the [Chen Trust 2] are consistent with Pennsylvania law. See 20 Pa.C.S. § 7768. At all times, the Trustees' fees were reasonable and the Trustees' actions have been competent, professional, proper, legal, exercised in good faith, and predicated upon the advice of trust counsel and professional tax and investment managers and advisers, all of which were relied upon by the Trustees and consistent with the Trusts' terms and has served to benefit the present and any future beneficiaries of the Trusts.

Answer and New Matter to Adrian Chen's Objections to First and Partial Account for Adrian Chen Trust No. 1, 5/5/16. The answer to the objections to the second trust is identical. See Answer and New Matter to Adrian Chen's Objections to First and Partial Account for Adrian Chen Trust No.2, 5/5/16, at 20-22.

The orphans' court likewise understood that Mr. Chen's objections were to the payment of any fees at all and not a challenge to whether they were reasonable. It resolved that claim as follows:

> The main objection that was raised is the payment from the Trusts for attorney fees to Reed Smith, Robinson, Buchanan Ingersoll, and Kozusko, and the payment for Plung's accounting services. Here, the Trustees were placed in a position to be sued because of the duties they performed or allegedly failed to perform as Trustees. Adrian brought action for surcharge against the Trustees alleging they failed in their duties as Trustees. Thus, it would be unjust to require the Trustees to personally pay to defend legal actions bought against them solely by reason of their positions as Trustees, where the Trustees prevailed against surcharge.
>
> The Supreme Court of Pennsylvania has determined that "It is well established that whenever there is an unsuccessful attempt by a beneficiary to surcharge a fiduciary the latter is entitled to an allowance out of the estate or trust to pay for counsel fees and necessary expenditures in defending himself against the attack." In re McGillick Foundation, 537 Pa. 194, 204, 642 A.2d 467, 472 (1994), (wherein the Supreme Court approved the payment of the trustees' litigation expenses from the foundation after the trustees successfully defended litigation that attempted to remove them and surcharge them)[.]

Trial Court Opinion, 11/30/16, at 17.

The rules applicable to objections to a filed account are clear:

> (a) Objections to an Account and/or a petition for adjudication/statement of proposed distribution shall be filed with the clerk on or before the time and date of the audit in those counties holding an audit, and by a specified date in all other counties, with a copy sent by first-class United States mail, postage prepaid, to the accountant or the accountant's counsel, if represented, and to each interested party and claimant who received the notice pursuant to Rule 2.5, to the extent known.

- 13 -

(b) Objections shall be in writing, with consecutively numbered paragraphs, signed by counsel, or if not represented by counsel, then by all the objectors in accordance with Rule 3.12. Objections shall be verified by at least one of the objectors in accordance with Rule 3.13.

(c) Each objection shall:

(1) be specific as to description and amount;

(2) raise one issue of law or fact, but if there are several objections relating to the same issue, all such objections shall be included in the same paragraph as subparts; and

(3) briefly set forth the reason or reasons in support thereof.

(d) The court may extend the time for filing objections.

Pa.O.C.Rule 2.7 (emphases added).

In this case, Mr. Chen's objections were to the payment of any fees whatsoever. Moreover, Mr. Chen failed to set forth the reason or reasons why all those trustees/lawyers/accountants fees from 1987 to 2016 should be surcharged to the trustees, and he did not specify the amount that he was contesting. Mr. Chen made no attempt, either in his objections or at the hearings conducted on those objections, to parse out what he now concedes to be proper fees from what he now contends were improper fees.[4]

_____

[4] In this connection, we observe that Mr. Chen also claims that investment advisor fees and management fees were improperly paid by the trustees. Appellant's brief at 35. Neither item was mentioned or contested in the objections that he filed.

See Appellees' brief at 57 ("Appellant takes a different approach on appeal from that which he took before the Trial Court. At trial, he never objected to the reasonableness of the majority of the professional fees, but only to their payment."). Simply put, the issues that he now raises on appeal were not presented to the orphans' court. He has therefore waived his first issue for purposes of this appeal. See Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Mr. Chen's second averment faults the orphans' court for refusing to surcharge the trustees for the potential adverse tax consequences that might flow from their treatment of the Chen Trust 2 as a foreign grantor trust when it did not qualify for that status after August 20, 1996.[5] As we articulated in In re Estate of Warden, 2 A.3d 565, 573 (Pa.Super. 2010) (citation omitted), a trustee has a duty to preserve the trust assets, and the standard of care "imposed upon a trustee is that which a man of ordinary prudence would practice in the care of his own estate." A surcharge is imposed when the trustee does not "exercise common prudence, skill and caution in the performance of its fiduciary duty, resulting in a want of due care." Id. A surcharge is a penalty imposed on the trustees to compensate the beneficiaries of the trust for any loss occasioned by the trustee's lack of

_____

[5] We note that the trustees indicate that they have instituted a legal malpractice claim against Mr. Robinson in the event the trust incurs taxes and penalties based upon the fact that Mr. Chen's children were named beneficiaries of the Chen Trust 2 prior to the retroactive amendment.

due care. *Id.* Concomitantly, the orphans' court cannot surcharge a trustee unless it finds both "that the trustee breached a fiduciary duty and (2) that the trustee's breach caused a loss to the trust." *Id.*

Since we agree with the orphans' court assessment that the trustees did not commit a breach of fiduciary duty, we need not reach the second element of the surcharge test.[6] In this connection, we note that, with exceptions not herein applicable, the terms of a trust instrument prevail over any contrary provisions contained in the chapter of the Probate Estates and Fiduciaries Code applicable to trusts. 20 Pa.C.S. § 7705(a). The trusts provide in pertinent part:

> The Trustees of such Trust shall have and may exercise the following powers:
>
> . . . .
>
> (L) To employ and retain such accountants, attorneys, custodians, employees, investment counselors and other representatives located in the United States or abroad . . . as from time to time the Trustees shall reasonably determine to be necessary and proper for the administration of such trust estate; to act without independent investigation upon the recommendation of any of such representatives[.]

Adrian Chen Trust No. 1 § 5.2(L) (emphasis added); Adrian Chen Trust No. 2 § 4.2(L) (emphasis added); see also 20 Pa.C.S. § 7777(a)(1), (3) ("A

_____

[6] There was evidence adduced at the hearings that the statute of limitations prevented the IRS from seeking back taxes for any years other than 2013-2015.

trustee may delegate duties and powers that a prudent trustee of comparable skills might delegate under the circumstances. The trustee shall exercise reasonable care, skill and caution in . . . selecting an agent . . . and reviewing periodically the agent's actions in order to monitor the agent's performance and compliance with the scope and specific terms of the delegation.").

Herein, the surcharge request was premised upon Mr. Chen's averments that the trustees were negligent and acted unreasonably in not obtaining a second legal opinion after October 2011, when they were advised of the defect in the Chen Trust 2. Mr. Chen additionally averred the existence of a breach of fiduciary duty when the trustees knowingly filed what he characterized as false tax returns indicating that the Chen Trust 2 was a foreign grantor trust.

In the present case, the orphans' court rejected these claimed breaches of fiduciary duty as it "determined that Trustees exercised reasonable care, skill and caution in selecting the professionals" so that they were not liable under the terms of the trust and § 7777. Trial Court Opinion, 11/30/16, at 11. In this respect, the court's findings, which are supported by the record, were as follows. Mr. Robinson was a qualified, prominent lawyer specializing in estates and trusts, with degrees from Princeton and the University of Pennsylvania, and practicing for a preeminent Pittsburgh law firm. Mr. Robinson had been retained by Mrs. Chen to prepare the Chen

Trust 1, a complex trust designed to reduce federal income taxes for foreign nationals.

After being told about the flaw in the Chen Trust 2, Mr. Robinson informed the trustees that 1) he could remedy the situation by modifying the trust retroactively so that Mr. Chen's issue would be eliminated as beneficiaries; 2) he told Mr. Unkovic about the solution; 3) they were working on the situation together; and 4) documents would be sent to Mr. Chen for final approval. Mr. Robinson's advice that the trust could be retroactively modified was proven correct in light of the subsequent IRS private ruling to that effect.

Mr. Unkovic, in turn, informed Mr. Chen about Mr. Robinson's proposal, but Mr. Unkovic, who was frequently out of the country, never told Mr. Robinson that Mr. Chen was going to refuse to cooperate with modifying the trust. Based upon the information conveyed by Mr. Robinson to the trustees, the orphans' court correctly concluded that they had no reason to seek another legal opinion at that point.

After this action was instituted, the trustees retained the services of Mr. Kozusko, who also filed tax returns treating the Adrian Chen Trust 2 as a foreign grantor trust. Mr. Kozusko, a Harvard Law School graduate, had offices in Washington D.C., New York, Chicago, Illinois, and Connecticut, and had practiced domestic and international estate and tax planning for over thirty-five years.

While Mr. Chen takes umbrage with the trustees' failure to ensure that Mr. Robinson was a specialist in foreign grantor trusts, he never established that there was such a subspecialty in the trusts area. Mr. Robinson's credentials as an estates and trusts attorney were impeccable, and the trustees were permitted, under the trust instrument, to rely upon his advice without independent investigation. Accordingly, the orphans' court did not abuse its discretion in concluding that the trustees did not breach their fiduciary duty in relying upon his advice from 2011 until 2013.

The second ground for surcharge relates to the 2011-2014 income tax filings by the trustees that continued to treat the Chen Trust 2 as a foreign grantor trust. Mr. Chen asserts that the trustees breached their fiduciary duty because they knew that the Chen Trust 2 did not qualify as a foreign grantor trust, and yet knowingly filed false tax returns for the years in question. In connection with this surcharge contention, we rely upon the following portion of the excellent and well-reasoned opinion of the orphans' court, the Honorable Frank Lucchino, and adopt it as our own for purposes of its disposition.

> The second basis for surcharge is Adrian's assertion that the Trustees knowingly filed false tax returns, claiming AC-2 was a Grantor Trust when they knew it was not a Grantor Trust. Adrian claims tax liability could exceed one million dollars. (R at 40). Attorney Robinson advised the Trustees that given the statute of limitations, any back taxes that were owed by AC-2 would be de minimus. (TT at 756).
>
> Adrian cites In re Estate of Lohm, 440 Pa. 268, 269 A.2d 451 (1970), for the theory that Trustees breached their fiduciary

duties by filing erroneous tax returns in reliance on Robinson and Plung. In Lohm, the estate had missed the federal and Pennsylvania tax deadline and the Court determined that the fiduciaries were liable since they should have known or ascertained the tax deadline. Similarly, in Estate of Geniviva, 675 A.2d 306, 311, 450 Pa.Super. 54, 64 (1996), the fiduciary (executor) did not file estate tax returns because his attorney had negligently advised him that the estate did not owe federal estate taxes. The Court determined that the fiduciary was liable because they should have known that estate taxes were due, rather than filing them four years late.

The instant case is distinguishable from Lohm and Geniviva because the issue of grantor trust was too complex and technical for the Trustees to have known that AC-2 was not a Grantor Trust. An indication of the complexity of this issue is that four tax experts testified in this case and there has not been a unanimous agreement among them. Due to the complexity of the grantor trust issue, the Trustees reasonably hired professionals and relied on those professionals who advised them to file the federal tax returns as though AC-2 was a Grantor Trust.

Adrian alleges that the Trustees knew that the tax returns they filed were incorrect. Robinson, Plung, and Kozusko all advised DeMartino to continue to file tax returns as a Grantor Trust. (TT at 726-731, 824-826). Robinson stated that, "The Trustees relied on us to prepare the returns." (R at 50). DeMartino testified that he did not think, according to what he was told, that they were filing the wrong return. (TT at 31). DeMartino believed that once the change was made retroactively then everything would be fixed[,] (TT at 725, 730-733), so he signed the tax return as his experts had advised. It was not negligent for DeMartino to sign the tax returns that his professionals had prepared.

Furthermore, the Trustees were never definitely told that AC-2 was not a Grantor Trust. The Trustees were told by Robinson that an issue arose as to whether AC-2 qualified as a Grantor Trust but Robinson told them that the issue was fixable and would be fixed. (TT at 677-680, 705, 809-810, 936-937, 944, 988). DeMartino believed that to mean that AC-2 contained either a typo, a scrivener's error or a drafting error. (TT at 685). Bischof was informed it was a scrivener's error.

(TT at 944, 954). Abbott was informed that there was a scrivener's error creating an issue as to whether it was a foreign grantor trust. (TT at 979-981). Every time Abbott talked to Robinson about the grantor trust issue, Robinson assured him there was a ready solution to it and not to worry, and that it was agreed by Adrian to be fixed. (TT at 988).

When DeMartino and Robinson discussed the grantor trust issue, Attorney Robinson informed DeMartino "that Dennis or Joe[l] Pfeffer, one of Dennis' law partners, said that there was a clause in AC-2 that makes it not a Grantor Trust; and it could be — I don't want to put the 'easily' word in his mouth, but it could be readily fixed; and all he had to do is reform it, and something called reformation or modification, I'm not sure which it was, and by getting rid of the clause, it would - - and in Pennsylvania he said you could go retroactive, might have needed the court's approval of the retroactivity back to '96, and it would then be a Grantor Trust." (TT at 809-810). Neither Robinson, nor anyone else at Reed Smith ever told the Trustees that they had concluded that AC-2 was not a Grantor Trust. (TT at 809 - 810).

This Court finds that Robinson never told the Trustees conclusively that AC-2 was not [a] Grantor Trust. Instead[,] the Trustees were told that any error in AC-2 could be readily remedied retroactively. (TT at 677-680, 705, 809-810, 936-937, 944, 988).

Furthermore, Robinson and Plung advised the Trustees with respect to the filing of the 2011-2013 tax returns as a Grantor Trust and the Trustees reasonabl[y] relied on their advice. (723-728, 824-826, 854). Don Kozusko, Esquire, was retained by the Trustees to prepare the 2014 taxes. His credentials were uncontested. . . . All the experts that testified agreed that Kozusko is an expert in his field. Kozusko advised the Trustees with respect to filing the 2014 tax returns as a Grantor Trust and the Trustees reasonably relied on his advice. (728, 854). This Court has determined that the Trustees were not negligent for relying on Robinson, Plung, and Kozusko to prepare the tax returns.

Trial Court Opinion, 11/30/16, at 11-14.

Mr. Chen's third surcharge claim pertained to income taxes withheld by PNC Bank in 1995. The trustees' proof at the hearings was that both the Chen Trust 1 and the Chen Trust 2, as foreign non-grantor trusts and foreign grantor trusts, respectively, were subject to 30% withholding tax on all dividends derived from the United States. In 1995, the trust assets were transferred to PNC Bank, N.A., which advised the trustees that it would withhold 30% on all United States dividends that the trust received for income tax purposes. The trustees accepted this decision. Mr. Kozusko testified on behalf of the trustees, stating that he would not have expected them to question the decisions of the professionals handling the trusts as to what taxes should be withheld from the trusts' income. The orphans' court concluded that, "the Trustees were not negligent for relying on the advice of their professionals" with respect to the amount of taxes that should be withheld on United States source income. Id. at 18. This decision did not constitute an abuse of discretion as the trust terms and the Probate, Estates, and Fiduciaries Code permits trustees to rely upon advice from qualified professionals. Accordingly, no relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/12/2018