J-A12042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ADRIAN A. CASTELLI, DEBORAH WARDEN, WILLIAM S. MEZZANOTTE, MARY G. LOVE, HEIDI M. SHARKEY, SANDRA MEZZANOTTE, ERIC NICHOLS, ASHLEIGH NICHOLS, GERALYN JACOBS, JOANNE BERWIND, MARSHALL JACOBS, STEVEN C. SHARKEY AND SAMUEL D' ANGELO | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | No. 1961 EDA 2023 |
| | : : : | |
| v. | : : : | |
| | : | |
| ROBERT P. GOLDMAN, CHESTER COUNTY, WILLISTOWN TOWNSHIP, JOHN KENNETH NIMBLETT, NATURAL LANDS TRUST, INC AND BRANDYWINE CONSERVANCY AND MUSEUM OF ART | : : : : : : : | |
| | : : | |
| APPEAL OF: JOHN KENNETH NIMBLETT AND ROBERT P. GOLDMAN | : : : | |

Appeal from the Order Entered June 30, 2023
In the Court of Common Pleas of Chester County Orphans' Court at
No(s):  1521-2754

BEFORE:   PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED AUGUST 9, 2024**

John Kenneth Nimblett and Robert P. Goldman (collectively

"Appellants"), co-trustees of the Inter Vivos Trust of Martha Stengel Miller,

appeal from the order of the Court of Common Pleas of Chester County that

_____

[*] Former Justice specially assigned to the Superior Court.

overruled Appellants' preliminary objections. We quash this appeal as interlocutory and remand for further proceedings consistent with this decision.

On November 23, 2021, multiple individuals ("Neighbors") filed a petition to stop the development of a property referred to as Summerhill Preserve, which borders their properties where they have residences. The relevant properties are located along Goshen Road in Willistown Township, Chester County, Pennsylvania.[1] National Lands Trust, Inc. (NLT), the current owner of Summerhill Preserve, has expressed its desire to create nature trails on its property and to facilitate public access by installing a paved road and a parking lot. Petition at ¶ 1-2.

We glean the following factual background from the parties' pleadings and preliminary objections which contain extensive detail about the relevant properties and restrictions placed upon their use. For the ease of review, we include only the facts essential to reach our conclusion.

Summerhill Preserve and Neighbors' properties were originally part of a large plot of approximately 111 acres of land (known as "Summerhill Farm") that was owned by the late Martha Stengel Miller and the late Henry Stuckert Miller ("the Millers"). Petition at ¶ 10, 33. In 1986, the Millers subdivided Summerhill Farm into three parcels: A, B, and C; thereafter, parcel A was

---

[1] The appeal caption in this case lists the current list of individuals challenging the Summerhill Preserve development, which changed since the filing of Neighbors' petition due to the transfer of property and the substitution/ addition of multiple parties.

subsequently subdivided into nine smaller lots: A-1, A-2, A-3, 1, 2, 3, 4, 5, and 6 (collectively "the Parcel A lots").  Petition at ¶ 42-46.

Neighbors assert that the Millers had "embarked on a program to limit residential development on Summerhill Farm and to impose restrictions on the property consistent with their desire to protect and preserve the ecosystems, flora, fauna, viewsheds, soil and water throughout all the land comprising Summerhill Farm."  Petition, at ¶ 34.  For example, in 1978, the Millers placed a conservation easement on 9.9 acres of Summerhill Farm that prevented tree cutting, depositing of waste, quarrying, and construction of buildings or utilities ("1978 Indenture").  Petition, at ¶ 38-39.  The Millers granted the 1978 Indenture to Brandywine Conservancy and Museum of Art ("Brandywine").  Petition, at ¶ 38-39.  Neighbors emphasize that the 1978 Indenture, states that "[n]othing herein shall be construed to grant to the general public or to any other person the right to enter upon the easement area, said right being limited to Brandywine or its duly authorized agents, for the purposes set forth herein."  Petition, at ¶ 38-39; Petition Exhibit 1, at ¶ 5.

In 1994, Martha Stengel Miller ("Mrs. Miller") created a personal *inter vivos* trust ("Trust") to manage her extensive assets and appointed herself and her son Henry S. Miller, Jr. ("Rusty Miller") as co-trustees.  Petition, at ¶ 3. After Henry S. Miller, Sr. passed away in 1999, Mrs. Miller continued her conservation efforts with respect to Summerhill Farm and placed conservancy easements upon each lot in the subdivision plan.  Petition at ¶ 36-37.

In 2004, Mrs. Miller conveyed Parcel C and Lots 3 and 4 of Parcel A to NLT. Petition at ¶ 86, 88; Petition Exhibits 12, 14. In 2006, Mrs. Miller recorded an amended and restated declaration for the Parcel A Lots which ratified the subdivision plan and delineated a common road which provides access from each of the Parcel A lots to Goshen Road. Petition, at ¶ 80.

In 2007, Mrs. Miller updated her trust pursuant to an "Amendment and Complete Restatement of Inter Vivos Agreement of Trust of Martha Stengel Miller." The Trust was established for the benefit of her son, Rusty, and his husband, John Kenneth Nimblett ("Appellant Nimblett"). Mrs. Miller passed away on December 30, 2008. Thereafter, on January 31, 2009, Appellant Nimblett was named co-trustee of the Trust, and on August 24, 2010, Robert P. Goldman ("Appellant Goldman") was added as a third trustee. After Rusty Miller's death on June 2016, Appellants were left as the remaining co-trustees.

The remaining Parcel A lots were conveyed to several of the Neighbors and NLT. Lots A-1 and A-2 were purchased by Frederick and Christine Seving in June 11, 2007 and conveyed to Appellees Eric and Ashleigh Nichols. Petition at ¶ 48-50; Notes of Testimony (N.T.), 12/5/22, at 42. Lots A-3 and 2 were purchased by Appellees Adrian Castelli and Mary "Molly" Love on July 17, 2018. Petition at ¶ 52-62. Lot 1 was purchased by Appellees William and Sandra Mezzanotte on May 5, 2021.[2] Petition at ¶ 63.

---

[2] Appellees Joanne Berwind, Marshall Jacobs, Geralyn Jacobs, Steven C. Sharkey, Heidi M. Sharkey, Deborah Warden, and Samuel D'Angelo own property interests in parcels that border NLT's property. Petition at ¶ 110-11, 115-16, 119-20, 136-40.

The Trust still owned Lots 5 and 6 of Parcel A at the time of Mrs. Miller's death in 2008. On December 14, 2016, Appellants, on behalf of the Trust, amended the conservation easement that Mrs. Miller had previously placed on Lots 5 and 6 in 2007, in order to allow the lots to be used "as a preserve by the Owners and Owners' invitees, including the public." Petition, at ¶ 105; Petition Exhibit 18. The Trust conveyed Lots 5 and 6 to NLT; the conservation easement on those lots was assigned to Brandywine. Petition at ¶ 100, Petition Exhibit 19.

Thereafter, NLT announced its intention to create "Summerhill Preserve" out of the fifty-two acres contained in Parcel C and Lots 3, 4, 5, and 6 of Parcel A, which had been donated to NLT. Petition at ¶ 141-42; Petition Exhibit 28.[3] NLT indicated that it had intended to honor the desires of Rusty Miller and Nimblett to expand public access to the Preserve by adopting a resolution to improve the preserve "[w]ith an entrance sign, 10-car parking lot, kiosk, and trails." Petition Exhibit 28. NLT also indicated that it had "decided to seek permits and approval for a 20-foot-wide paved access driveway off of Goshen Road, parallel to the shared driveway and entirely on Parcel 54-7-68.2 [Parcel C]." Petition Exhibit 28.

In their petition seeking to stop the development of Summerhill Preserve for public access, Neighbors filed an action against NLT, Brandywine,

---

[3] While the Petition states that NLT's plans to create Summerhill Preserve included Lot 2, this appears to be an error as the Petition also states that Lot 2 is owned by Appellees Castelli and Love. *See* Petition, at ¶ 53, 141-42.

Appellants, Chester County, and Willistown Township. The petition included multiple counts including, *inter alia*, declaratory judgment as to the meaning of the restrictive covenants encumbering Summerhill Preserve, injunctive relief to prevent the development of Summerhill Preserve, and a request that the trial court order Brandywine, Chester County and/or Willistown Township to enforce the language of the conservation easements. Petition at ¶ 8. Neighbors allege that Mrs. Miller created a comprehensive scheme of easements across the subdivisions of Summerhill Farm to preserve nature and limit development of the properties.

With respect to the Trustees, Neighbors sought to invalidate actions taken by the Trustees by arguing that Trustees have "failed to abide by the directors of the grantor, the late Martha Stengel Miller, as set forth in various covenants encumbering Summerhill Preserve and surrounding properties executed between 1978 and [Mrs. Miller's] death in 2008." Petition at ¶ 3.

More specifically, in count IV of the petition, Neighbors asserted a claim of "Breach of Trust" against Appellants, asserting that Appellants violated the Trust when they revised the language of the conservation easement on Lots 5 and 6 in 2016 to allow recreational use of the properties by the public. Petition at ¶ 182, 185-87. Neighbors specifically argue that as individuals who own and occupy properties bordering Lots 5 and 6 of the Summerhill Subdivision Plan 2, they are intended beneficiaries of the Lots 5 and 6 2007 Easement, or in the alternative, are *de facto* beneficiaries. Petition at ¶ 183. In count V of the petition, Neighbors sought a declaratory judgment that

Appellants' execution of the Lots 5 and 6 2016 Easement is "null and void as an *ultra vires* act." Petition at ¶ 196-98.

On February 1, 2022, Appellants filed preliminary objections in the nature of a demurrer to Neighbors' Breach of Trust and Declaratory Judgment counts, arguing that Neighbors did not have standing to raise such counts as they were not beneficiaries under the plain language of the Trust. Appellants also contend they had express authority under both the Trust and the terms of the conservation easement at issue to amend the easement.

On June 30, 2023, the trial court entered an order overruling Appellants' preliminary objections after it had noted that discovery was warranted on the issue of public access. On July 25, 2023, Appellants filed a timely appeal.

On October 5, 2023, the trial court filed an opinion filed pursuant to Pa.R.A.P. 1925(a), asking this Court to quash the instant appeal as interlocutory. On November 8, 2023, this Court issued a Rule to Show Cause directing Appellants to show why this case should not be transferred to the Commonwealth Court, which has exclusive jurisdiction over appeals from final orders of the courts of common pleas regarding actions arising under any municipality. *See* 42 Pa.C.S.A. § 762(4). In addition, this Court directed Appellants to show why this appeal should not be quashed as an interlocutory.

On November 20, 2023, Appellants filed a response to the Rule to Show Cause, indicating that the appeal did not need to be transferred to the Commonwealth Court as the governmental parties, Chester County and Willistown Township, had been dismissed from this action by stipulation.

- 7 -

With respect to appealability, Appellants argued that the trial court's order overruling its preliminary objections was appealable under Pa.R.A.P. 342(a) as they alleged that the trial court implicitly interpreted trust documents, determined the status of beneficiaries to a trust, and adjudicated specific rights related to trust property. Appellants also asserted that this Court has jurisdiction to review the appealed order as a collateral order under Pa.R.A.P. 313(a).

Before we reach the merits of the appeal, we must determine whether the trial court's order is an appealable order. "As a general rule, 'an appellate court's jurisdiction extends only to review of final orders.'" ***J.C.D. v. A.L.R.***, 303 A.3d 425, 429 (Pa. 2023) (quoting ***Shearer v. Hafer***, 177 A.3d 850, 855 (Pa. 2018)). Our rules of appellate procedure provide that "an appeal may be taken as of right from a final order of a … trial court." Pa.R.A.P. 341(a). A final order is characterized as an order that "disposes of all claims and of all parties" or "is entered as a final order" pursuant to a determination of finality by a trial court or other governmental unit. ***J.C.D.***, 303 A.3d at 429 (citing Pa.R.A.P. 341(b)(1),(3). Generally, our courts have found that an order overruling preliminary objections is interlocutory and unappealable. ***Schwartz v. Kelly Servs., Inc.***, 313 A.3d 453, 456 (Pa.Super. 2024) (quoting ***In re Estate of Atkinson***, 231 A.3d 891, 897 (Pa.Super. 2020)).

Appellants do not dispute that that appealed order was not final under Rule 341 but first claim that the order in question is an interlocutory order

appealable as of right under Pennsylvania Rule of Appellate Procedure 342(a), which provides in relevant part:

> **(a) General rule.** An appeal may be taken as of right from the following orders of the Orphans' Court Division:
>
> ***
>
> (3) An order interpreting a will or a document that forms the basis of a claim against an estate or trust;
>
> (4) An order interpreting, modifying, reforming or terminating a trust;
>
> (5) An order determining the status of fiduciaries, beneficiaries, or creditors in an estate, trust, or guardianship;
>
> (6) An order determining an interest in real or personal property…

Pa.R.A.P. 342(a)(3)-(6).

Appellants specifically contend that the trial court implicitly found that Neighbors were beneficiaries of the Trust when it denied their preliminary objections in the nature of a demurrer based on Appellants' claim that Neighbors had no standing to sue Appellants for breach of trust. We disagree.

A trial court's review of a preliminary objection in the nature of a demurrer simply tests whether the contested pleading is legally insufficient. *Commonwealth by Shapiro v. UPMC*, 208 A.3d 898, 908 (Pa. 2019).

> For the purpose of evaluating the legal sufficiency of the challenged pleading, the court must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts." *Mazur v. Trinity Area Sch. Dist.*, 599 Pa. 232, 961 A.2d 96, 101 (2008).
>
> The "question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be

sustained, this doubt should be resolved in favor of overruling it."
**Bilt-Rite Contractors, Inc. v. The Architectural Studio**, 581
Pa. 454, 866 A.2d 270, 274 (2005) (quoting **MacElree v. Phila.
Newspapers, Inc.**, 544 Pa. 117, 674 A.2d 1050, 1056 (1996)).

*Id*. at 908-909.

In this case, the trial court's June 23, 2023 order contained a summary denial of Appellants' preliminary objections in the nature of a demurrer and indicated that discovery was necessary on the issue of public access. In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court clarified that it overruled Appellants' objection to standing as it determined that Neighbors

> *may* show a substantial, direct, and immediate interest in the
> outcome of this litigation as intended or *de facto* beneficiaries of
> the original easements on Lot 5 and 6 which [Neighbors] allege
> were intended to benefit their residential properties and preserve
> natural resources by limiting development to a single home.

Trial Court Opinion, 10/5/23, at 2 (emphasis added). The trial court again emphasized that discovery was still warranted on this issue of public access.

Appellants do not point to any portion of the trial court's order or opinion that constituted an appealable ruling as of right under Rule 342. Despite Appellants' claims to the contrary, the trial court neither interpreted the Trust, nor determined the status of beneficiaries, nor determined an interest in real property. The trial court did not make any factual findings in its order, but rather indicated that it would need discovery to allow it to properly rule on the parties' contentions.

We reject Appellant's suggestion that the trial court's decision to deny their preliminary objections based on standing necessarily decided that Neighbors were entitled to sue as beneficiaries under the Trust. We

- 10 -

acknowledge our precedential law which states "[n]o one except a beneficiary or one suing on his behalf can maintain a suit against the trustee to enforce the trust or to enjoin or obtain redress for a breach of trust." **In re Francis Edward McGillick Found.**, 642 A.2d 467, 469 (Pa. 1994). However, the Supreme Court has clarified that a party that is not a named beneficiary of a trust may have standing to enforce a trust if it has a "substantial, direct, and immediate" interest in the litigation which is subject to a "discernible adverse effect … other than the abstract interest of all citizens in having others comply with the law." **Id.** at 469-70 (finding that diocese had standing to enforce a charitable trust although it was not a named beneficiary of said trust as the diocese's intimate involvement in achieving objectives of the trust created an interest far greater than the abstract interest of all citizens).

In this case, the trial court chose to overrule Appellants' demurrer based on standing as it was unable to conclude with certainty based on the detailed factual circumstances in this case that Neighbors could not be considered as intended or *de facto* beneficiaries of the conservation easements at issue. As the trial court did not make any definitive findings with respect to the trust or its beneficiaries, the trial court's order was not appealable as of right under Rule 342.

In the alternative, Appellants argue that the trial court's order is appealable as of right under the collateral order doctrine. This principle is codified in Pa.R.A.P. 313, which provides as follows:

(a) General Rule. An appeal may be taken as of right from a collateral order of a trial court or other government unit.

(b) Definition. A collateral order is an order[: (1)] separable from and collateral to the main cause of action[; (2)] where the right involved is too important to be denied review[;] and [(3)] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313. In other words, the collateral order doctrine "permits an appeal as of right from a non-final collateral order if the order satisfies the three requirements set forth in Rule 313(b) — separability, importance, and irreparability." *J.C.D.*, 303 A.3d at 430 (quoting *Shearer v. Hafer*, 177 A.3d 850, 858 (Pa. 2018)).

Our Supreme Court has emphasized that the collateral order doctrine must be narrowly construed, such that all three prongs of the aforementioned test must be proven, in order for the doctrine to be applicable. *J.C.D.*, 303 A.3d at 430 (citing *Rae v. Pennsylvania Funeral Directors Ass'n*, 977 A.2d 1121, 1126 (Pa. 2009)). Narrow construction of the collateral order doctrine reinforces the principle that appeals may only be taken from final orders and promotes judicial efficiency by avoiding piecemeal litigation of trial court decisions. *J.C.D.*, 303 A.3d at 430 (citing *K.C. v. L.A.*, 128 A.3d 774, 778 (Pa. 2015)). Further, given that parties may seek permission to appeal from an interlocutory order by permission pursuant to Pa.R.A.P. 312, our Supreme Court has noted that this "discretionary process would be undermined by an overly permissive interpretation of Rule 313's limited grant of collateral appeals as of right." *Rae*, 977 A.2d at 1126 (citations omitted).

In this case, the challenged order fails to meet the third prong of the collateral order doctrine, as Appellants' claim will not be irreparably lost if appellate review is postponed until the entry of a final order. While Appellants claim they were required by Rule 342 to take an immediate appeal of the trial court's order or face waiver of their claims,[4] we reiterate that Rule 342 is inapplicable at this point in the litigation as the trial court neither interpreted the Trust, nor determined the status of beneficiaries, nor determined an interest in real property. Instead, the trial court informed the parties that it required discovery to determine whether Neighbors were intended or *de facto* beneficiaries of the original easements in question which Neighbors claim were a part of a comprehensive benefit their residential properties and preserve natural resources.

Further, we note that Appellants could have sought permission to file an interlocutory appeal under Rule 312, by seeking certification from the trial court that its standing ruling involved "a controlling issue of law as to which there is substantial grounds for difference of opinion and that an immediate appeal from the order [could have] materially advanced the ultimate termination of the matter." **See** Pa.R.A.P. 1311(a)(1); 42 Pa.C.S.A. § 702(b). Regardless of whether the trial court granted certification, Appellants could

_____

[4] Rule 342(c) states that a party's "[f]ailure to appeal an order that is immediately appealable under paragraphs (a)(1)-(7) of this rule shall constitute a waiver of all objections to such order and such objections may not be raised in any subsequent appeal." Pa.R.A.P. 342(c).

have then sought this Court's permission to appeal the trial court's interlocutory order.  *See* Pa.R.A.P. 1311(a)(1).

Therefore, as Appellants failed to demonstrate the irreparability prong of the collateral order doctrine, the trial court's order does not constitute a collateral order appealable as of right under Rule 313.

For the foregoing reasons, we lack jurisdiction to address the merits of this appeal and must quash this appeal.

Appeal quashed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/9/2024